# Richmond

VALENTINE W. SOUTHALL, ADMINISTRATOR OF THE ESTATE OF FRANK
T. SOUTHALL, DECEASED v. ELDRIDGE REAMS, INC.

November 26, 1956.

Record No. 4606.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*Meredith A. House* and *W. Griffith Purcell* (*Purcell, Regirer &
House*, on brief), for the appellant.

*R. R. Parrish* (*Malcolm M. Christian; Parrish, Butcher & Parrish*,
on brief), for the appellee.

EGGLESTON, J., delivered the opinion of the court.

█ Frank T. Southall, hereinafter referred to as the claimant, filed
a claim for compensation for injuries arising out of and in the course

of his employment by Eldridge Reams, Inc. His claim was that on July 6, 1954, in the course of his employment, he became involved in a fisticuff with a fellow-employee, resulting in a severe brain injury and a permanent and total incapacity for work. Upon the evidence adduced the hearing commissioner held that the claimant had failed to prove by a preponderance of the evidence a causal connection between the blows received by him in the fight, the alleged industrial accident, and his disability. On review the full Commission affirmed and the claimant has appealed. Pending the hearing of the appeal the claimant died and the case was revived in the name of his personal representative.

The substance of the claimant's contention on appeal is that the finding of the Commission as to the lack of proof of causal connection is contrary to the weight of the evidence. Since the determination of this issue is purely factual, under well-settled principles our inquiry is limited to ascertaining whether there is credible evidence to sustain the Commission's finding. If so, that finding is binding on us. Code, § 65-94; 21 Mich. Jur., Workmen's Compensation, § 82, pp. 133-5.

The evidence shows that while the claimant was employed by Eldridge Reams, Inc., as a salesman of used cars, a dispute arose between him and another salesman, J. S. Lyerly, over the division of a commission for the sale of a car. Words led to a fisticuff. The claimant testified that Lyerly struck him several times in the face with his fist, causing his nose and mouth to bleed. He said that one of these blows was so severe as to cause the back of his head to strike the wall. He left his place of employment and went home in a taxicab. At home the bleeding continued and he became nauseated. He stayed in bed for several days and then sought and procured other employment. However, he said, he became dizzy, was unable to work, and quit that employment after four or five days.

Lyerly's version of the severity of the fight is quite different. He said that the encounter lasted not over thirty seconds; that only two or three blows were exchanged; that the fight occurred "in the middle of the floor;" that claimant was not knocked down nor did he fall or strike his head against the wall or any other object. Lyerly said that his own glasses were broken and face cut in the fight. Both his and claimant's face bled slightly, he said.

C. E. Kersey, a fellow-employee of the two and an eyewitness to the fight, fully corroborated Lyerly's version. He was equally as

positive as Lyerly that the claimant was not knocked down nor did his head strike the wall or any other object. The only injury which he observed that the claimant received was a slight nose bleed.

On July 22, sixteen days after his encounter with Lyerly, the claimant entered Johnston-Willis Hospital in Richmond for observation and treatment. He complained of weakness, dizziness and staggering during the past four days. He gave no history of having recently been in a fight or having received a blow or injury to his head. An attending physician diagnosed his condition as "cerebral arteriosclerosis with early Parkinsonism." The hospital record shows the diagnosis as "probable cerebro-vascular accident involving a cerebellar vessel."

Dr. T. D. Davis first examined the claimant on the day he entered the hospital, but was then unable to determine the cause of his condition. Later when relatives gave the physician a history of the claimant's having been engaged in a severe fight in which his head had struck a table or wall, Dr. Davis concluded that his condition was caused by trauma. Based on this history Dr. Weir M. Tucker, a neurologist and psychiatrist, who examined the claimant on July 24, was of the same opinion.

On September 7, Dr. Charles E. Troland, a neurosurgeon, performed an operation on the claimant to determine whether there was evidence of a lesion or subdural hematoma, but concluded that there was none. The claimant was then discharged from the hospital to a nursing home.

In October the claimant was taken to Grace Hospital in Richmond for further examination by Dr. A. A. Houser, Jr., who diagnosed his trouble to be "Parkinson's disease, or shaking palsy, or cerebellar ataxia." While he testified that this condition could be the result of trauma, "usually it is not," he said.

Upon his discharge from Grace Hospital the claimant was again placed in a nursing home where he remained, totally disabled, until his death on July 3, 1956.

The full Commission stated in its opinion that it accepted the testimony of Lyerly and Kersey as to the lack of severity of the fisticuff and the fact that claimant's head had not struck the wall, as the claimant testified. This finding of fact is, of course, binding on us. The further fact that the claimant made no mention of the incident at the time of his first admission to the hospital tends to show that he

did not attribute his condition to injuries received in the fight, and lends support to the Commission's finding.

At the hearing hypothetical questions were propounded to both Drs. Tucker and Troland as to the probability of the claimant's condition having been caused by a blow or blows to his head sustained in the fight. Both of these physicians expressed the view that if the claimant was in good health before the fight and received a severe blow to his head by striking the wall or a table in the room, his condition probably resulted therefrom. But, as has been said, the Commission rejected the factual basis for that assumption and hence there was no foundation for a conclusion based upon it.

Dr. Tucker was examined at length as to whether a slight blow to claimant's face in the fight probably caused his condition. At first his reply was that it "could have" or "was possible." When pressed further he expressed the view that it "probably" did. Neither the hearing commissioner nor the full Commission was impressed with Dr. Tucker's testimony on this subject and so stated in their written opinions.

On the other hand, Dr. Troland was firm in his opinion that if the blow was of the "relatively minor nature" as described by Lyerly and Kersey, "it was very unlikely it would cause the amount of deterioration that has occurred in this patient." The Commission adopted Dr. Troland's view and its finding settles this conflict in the evidence.

Moreover, all of the medical testimony shows that the claimant's condition could have been attributable to natural causes and in the absence of evidence of trauma should be so attributed.

Based on this evidence the Commission found as a fact that the claimant had not proved by a preponderance of the evidence a causal relationship between the slight injuries received by him in the fight and his disabled condition; that it was equally as probable that the disability resulted from causes not compensable. Hence, the Commission properly concluded that the claimant was not entitled to compensation.

We have frequently pointed out that a claimant must prove a causal connection between the accident and the disability which he claims resulted therefrom. "This proof must go beyond conjecture. If the evidence shows that it is just as probable that the disability resulted from a cause which is not compensable, as it is that it resulted from one which is compensable, the claimant has not sustained the burden

of proof." *Carter* v. *Hercules Powder Co.*, 182 Va. 282, 288, 28 S. E. 2d 736, 738, and cases there cited. See also, *Johnson* v. *Capitol Hotel*, 189 Va. 585, 590, 591, 54 S. E. 2d 106, 109.

The award is

*Affirmed.*