413 F.2d 793
 AEROJET-GENERAL SHIPYARDS, INCORPORATED and the Home Indemnity Company, Appellants,
v.
William M. O'KEEFFE, Deputy Commissioner, Sixth Compensation District, U. S. Department of Labor, et al., Appellees.
 No. 25039.
 United States Court of Appeals Fifth Circuit.
 June 23, 1969.
 
 Bruce S. Bullock, Jacksonville, Fla., for appellants.
 Virginia Q. Beverly, Asst. U. S. Atty., Jacksonville, Fla., Norman Knopf, Alan S. Rosenthal, Walter H. Fleischer, Attys., Dept. of Justice, Washington, D. C., for appellees.
 Before GOLDBERG, GODBOLD and SIMPSON, Circuit Judges.
 SIMPSON, Circuit Judge:
 
 
 1
 Aerojet-General (Company) appeals from the denial of its motion for summary judgment and the grant of the Deputy Commissioner's (Commissioner) motion for summary judgment in a suit by the Company to vacate a compensation order entered by the Commissioner pursuant to the Longshoremen's and Harbor Workers' Compensation Act.[1]
 
 
 2
 The facts are undisputed. Hobart Lee, the injured employee, worked six years for the Company as a sandblaster at its Jacksonville, Florida, shipyard. On August 26, 1964, Lee fell while attempting to escape a broken hose and injured his ankle. On September 2, 1964, the Company filed an injury report with the Commissioner. Subsequently, Lee was awarded $100 compensation for the ankle injury. The ankle injury proved to be more severe than expected, and Lee never returned to work after August of 1964.
 
 
 3
 Lee had experienced some difficulty in breathing and soreness in his shoulder at various times while still working, particularly during warm weather. He visited several doctors concerning these problems and in January, 1966, learned from a doctor at the University of Florida Medical School that he had a condition diagnosed as rheumatoid arthritis and chronic pulmonary fibrosis. This doctor informed Lee that the arthritis and fibrosis was caused or aggravated by Lee's prolonged exposure to sandblasting operations during the course of his employment. On February 14 or 16, 1966, about a month after the diagnosis, Lee filed a claim for compensation based on total and permanent disability resulting from the occupational diseases he had contracted. The Commissioner entered an award for total and permanent disability of $7,710, reduced by the $100 already paid Lee on account of his ankle injury. The Company's suit to vacate the compensation order followed with the district court granting summary judgment in favor of the Commissioner.
 
 
 4
 The Company contends that the compensation order and award was erroneous as a matter of law and that the Company's motion for summary judgment should have been granted rather than dismissed. The argument is that Lee failed to file his claim for compensation within one year of the date of injury and his claim is thus barred by limitations.[2] We reject the Company's position and affirm the district court's grant of summary judgment to the Commissioner.
 
 
 5
 The Company's limitation argument basically boils down to the contention that since Lee was disabled from the date of his ankle injury in August, 1964, he was required to file a claim for permanent disability before the end of August, 1965. This argument finds no support in the statutory language and must fail. The Company seems to be contending that Lee's principal disability stems from the ankle injury. This may be true, but he also became disabled from another "injury", the onset of occupational related diseases. This is a separate injury[3] and a new limitation period begins to run from the date of this injury, regardless of whether the first injury subsequently proved to be disabling also. "Injury" and "disability" as those terms are used in the Act are not interchangeable. The date of injury is the measuring point for the beginning of the § 913 (a) limitation period, not the date of disability. Cadwallader v. Sholl, 1951, 89 U.S.App.D.C. 285, 196 F.2d 14, cert. denied 343 U.S. 966, 72 S.Ct. 1061, 96 L.Ed. 1363 (1952).
 
 
 6
 It is important to note that we are not dealing in the instant case with an injury producing a latent disability or more serious consequences than was at first anticipated. See note 3, infra. In such circumstances, clearly, the limitation period for compensation application runs from the date of the injury and not the date when other consequences of the injury began to be manifested. Pillsbury v. United Engineering Co., 342 U.S. 197, 72 S.Ct. 223, 96 L.Ed. 225 (1952). The Company forgets that the compensation award it contests does not relate to an ankle injury but to occupational diseases. The employee has been compensated for his ankle injury, and we do not understand his claim to be for additional compensation because of the unforeseen severe disabling effects of that injury. We are solely concerned with whether or not the employee filed for compensation within one year after the "injury" resulting in disabling occupational diseases.
 
 
 7
 We are convinced that the employee filed his application well within the one-year statutory period. The Company contends, however, that Lee had experienced breathing difficulties and arthritic pains periodically since 1964. The record does indicate that Lee was aware of symptoms of his work-related diseases as early as 1964 and that he thought perhaps they might be caused or related to his working conditions. What the Company neglects to consider is that several doctors expressly rejected Lee's layman self-diagnosis and concluded that his problems were not work related. The first diagnosis linking Lee's breathing difficulties and arthritis with his working conditions occurred in January 1966, and the claim for compensation followed shortly thereafter. The limitations period for occupational diseases begins to run when the employee knows, or reasonably should know, that his condition is a disease which arose out of his employment. Traveler's Ins. Co. v. Cardillo, 2 Cir. 1955, 225 F.2d 137, cert. denied sub nom, 1955, Ira S. Bushey & Sons v. Cardillo, 350 U.S. 913, 76 S.Ct. 196, 100 L. Ed. 800. The Cardillo case holds that a claim for occupational disease accrues only when the "cumulative effects of exposure manifest themselves". 225 F. 2d at 142. The effects must manifest themselves to a physician rather than to an unschooled employee before limitations begin to run.[4] This analysis effectuates the policy that the Act is to be liberally construed in a way which avoids harsh and incongruous results. O'Keefe v. Altantic Stevedoring Co., 5 Cir. 1965, 354 F.2d 48.
 
 
 8
 Even if we were to accept appellant's strained interpretation of the statute, the Commissioner would be entitled to prevail for an additional reason. The Act provides that where the employer receives notice or knowledge of a job-connected injury or disease, the statute of limitations shall not begin to run against the employee's claim until an employer's report is filed.[5] The Commissioner found that the Company had notice of Lee's occupational disease. It is undisputed that the Company failed to file a report with respect to the arthritis and fibrosis. The Company argues that it filed a report of the ankle injury in 1964 and was not required to file a new report since Lee never returned to work. We find nothing in the statutory language to support this construction, and the Company cites no cases for its proposition. We hold that the plain language of 33 U.S.C. § 930(f) requires an employer with knowledge of an injury to file a report for that injury, whether or not the employee is at the same time disabled from an earlier injury. Therefore, the statute of limitations was tolled, and the employee's claim was timely filed regardless of when he may have arguably received notice of a work-related disease.
 
 
 9
 The judgment of the district court was correct. It is
 
 
 10
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 33 U.S.C. § 901 et seq
 
 
 [2]
 33 U.S.C. § 913(a) reads in relevant part as follows:
 "The right to compensation for disability under this chapter shall be barred unless a claim therefor is filed within one year after the injury * * *."
 
 
 [3]
 The record does not support the Company's contention that the fibrosis and arthritis were somehow related to the ankle injury. If that were true, there might be only one injury as the Company contends, and the claim for total disability might be barred by limitations. We intimate no opinion as to this proposition
 
 
 [4]
 The Supreme Court has never precisely ruled on this point in cases involving the Harbor Workers' and Longshoremen's Act. The Court has noted that there is a less rigid standard applied in determining when limitations begin to run for occupational diseases as compared to determining when limitations start for subsequent manifestations of latent effects of one injury. See Pillsbury v. United Engineering Co., supra
 The Court has rejected "mechanical analysis" of a similar limitation provision in the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). The Court considered occupational disease cases as a special category and noted that the statute of limitations could only begin to run when the employee has definite knowledge that his injury or disease is work-related. Accord Young v. Clinchfield R. R. Co., 4 Cir. 1961, 288 F.2d 499.
 
 
 [5]
 33 U.S.C. § 930(f) reads as follows:
 "Where the employer or the carrier has been given notice, or the employer (or his agent in charge of the business in the place where the injury occurred) or the carrier has knowledge, of any injury or death of an employee and fails, neglects, or refuses to file report thereof as required by the provisions of subdivision (a) of this section, the limitations in subdivision (a) of section 913 of this title shall not begin to run against the claim of the injured employee or his dependents entitled to compensation, or in favor of either the employer or the carrier, until such report shall have been furnished as required by the provisions of subdivision (a) of this section".