NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR and Sammy J. Jenkins, Respondents.

No. 77–1886.

United States Court of Appeals, Fourth Circuit.

Argued May 1, 1978.

Decided Sept. 21, 1978.

Mark A. Lies, II, Chicago, Ill. (Robert H. Joyce, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., William McL. Ferguson, Shannon T. Mason, Jr., Ferguson & Mason, Newport News, Va., on brief), for petitioner.

Joshua T. Gillelan, II, Atty., U. S. Dept. of Labor, Washington, D.C., Robert Arthur Blount, Hampton, Va., for respondents.

Before HAYNSWORTH, Chief Judge, FIELD, Senior Circuit Judge, and WIDENER, Circuit Judge.

FIELD, Senior Circuit Judge:

On April 1, 1975, a commissioner of the Industrial Commission of Virginia "denied and dismissed" the application of Sammy J. Jenkins for state workmen's compensation, concluding that the medical evidence failed to establish a causal relationship between the claimant's work-related exposure to welding fumes and the respiratory disability of which he complained. Upon review, the full Commission concurred, and on June 11, 1975, affirmed the commissioner's disposition of the claim. During the June 4th hearing upon the appeal from the single commissioner's award, a commissioner apparently suggested to the claimant that he was in the wrong forum because this was a "federal case."[1] On the same day Jenkins filed a claim for compensation based upon his respiratory disability under the federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq.*

Upon an evidentiary hearing, a federal administrative law judge determined that Jenkins, who worked as a welder aboard ships under construction, was engaged in "maritime employment" covered by the federal Act. Finding no evidence that Jenkins' serious respiratory problems existed prior to his tenure with the company, and concluding that the evidence offered by the employer on the issue of causation was insufficient to rebut the statutory presumption of compensability, the judge held that the claimant's disease was either caused or aggravated by his employment. The resulting award of compensation to Jenkins for a temporary partial disability was affirmed by the Labor Department's Benefits Review Board on May 13, 1977.[2]

The claimant's employer, Newport News Shipbuilding and Dry Dock Company, has petitioned for review, asking that we set aside the Board's affirmance of the Longshoremen's Act award and dismiss the employee's claim.[3] Petitioner maintains, as it did throughout the federal administrative proceedings, that the award was improper because (1) the claimant's initial pursuit of state compensation barred a federal award under the principles of "election of remedies," *res judicata*, and "full faith and credit;" (2) the application for Longshoremen's compensation was not timely filed; and (3) the award is not supported by substantial evidence.

Persuaded by none of these arguments, we affirm the final order of the Benefits Review Board.

–I–

We do not agree that Jenkins' prosecution of his claim under the Virginia compensation act constituted a "binding election of remedies" which deprived him of the right to subsequently pursue an award under the Longshoremen's Act. So far as we can ascertain, whatever legitimacy an "election of remedies" defense may once have enjoyed under the Act was attributable to a now defunct provision of the federal statute which brought an injury within the statute's coverage only if "recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law." Longshoremen's and Harbor Workers' Compensation Act, c. 509, § 3, 44 Stat. 1426 (1927) (current

---

1. This, however, was only an informal suggestion, and it was not the reason cited by the Commission for affirming the denial of the claim.

2. The Board's decision is reported at 6 BRBS 133 (1977).

3. We have jurisdiction under 33 U.S.C. § 921, as amended, 1972.

version at 33 U.S.C. § 903). *See Hahn v. Ross Island Sand & Gravel Co.*, 358 U.S. 272, 79 S.Ct. 266, 3 L.Ed.2d 292 (1959); *Davis v. Department of Labor*, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942). *Cf. Shea v. Texas Employers' Insurance Association*, 383 F.2d 16, 18–20 (5 Cir. 1967).[4] This language was deleted from the Act in 1972, Pub.L. No. 92–576, § 2(c), 86 Stat. 1251, and at present the federal statute contains no language indicating even an arguable intention by Congress to prohibit an award of Longshoremen's benefits after resort has been had to a state's compensation program.[5] Nor is there any constitutional objection to the pursuit of both state and federal remedies. Since at least 1962, it has been clear that both the federal and the state governments are constitutionally competent to redress, via workmen's compensation-type remedies, injuries occurring upon the navigable waters in the course of ship construction. *Calbeck v. Travelers Insurance Co.*, 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962).

■ To the extent that the petitioner may be understood to alternatively suggest that this is an appropriate case for the application of the traditional "election of remedies" doctrine which has an independent foundation in the common law, we note that in the absence of express legislative declaration to the contrary, the courts have been reluctant to extend this relatively harsh doctrine. *See Brooks v. United States*, 337 U.S. 49, 53, 69 S.Ct. 918, 93 L.Ed. 1200 (1949); *Friederichsen v. Renard*, 247 U.S. 207, 38 S.Ct. 450, 62 L.Ed. 1075

(1918). In any event, it is inapplicable where, as here, the second remedy which is pursued following an alleged "election" is not theoretically irreconcilable with the first, and does not require a claimant to assume a position inconsistent with that which he took in his initial quest for relief. *United States v. Oregon Lumber Co.*, 260 U.S. 290, 304, 43 S.Ct. 100, 67 L.Ed. 261 (1922) (Brandeis, J., dissenting); *Abdallah v. Abdallah*, 359 F.2d 170 (3 Cir. 1966); 1B Moore's Federal Practice ¶ 0.405[7] (Second edition).

■ Finally, in allowing Jenkins to pursue his federal Longshoremen's remedy, we discern no conflict with the "exclusivity" provision of the Virginia compensation statute, Va.Code § 65.1–40, which provides that:

"[t]he rights and remedies herein granted to an employee when he and his employer have accepted this Act respectively to pay and accept compensation on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin, at common law or otherwise, on account of such injury, loss of service or death."

Virginia itself has long recognized that where the Industrial Commission dismisses a claim upon a finding that the injury did not arise out of or in the course of employment, as it did in this case, § 65.1–40 is not to be interpreted to bar the employee from pursuing other available remedies. *See Griffith v. Raven Red Ash Coal Co.*, 179 Va. 790, 20 S.E.2d 530 (1942). *See also, Perrin*

4. Many of the reported cases decided under the old statute recognized the "election of remedies" defense, but were less than explicit in their reasons for doing so. More often than not, the defense was found not to preclude federal relief, although any sums paid to the employee under a prior state award or by virtue of an employer's voluntary compliance with a state statute were, of course, credited upon the federal award. *See, e. g., Calbeck v. Travelers Insurance Co.*, 370 U.S. 114, 131, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962); *Peter v. Arrien*, 463 F.2d 252 (3 Cir. 1972); *Harney v. William M. Moore Building Corp.*, 359 F.2d 649 (2 Cir. 1966) (dictum); *Western Boat Building Co. v. O'Leary*, 198 F.2d 409 (9 Cir. 1952); *Newport*

*News Shipbuilding and Dry Dock Co. v. O'Hearne*, 192 F.2d 968 (4 Cir. 1951); *Massachusetts Bonding & Insurance Co. v. Lawson*, 149 F.2d 853 (5 Cir. 1945).

5. To the contrary, in the course of amending the Act in 1972, the Congress expressed deep concern that state compensation schemes were inadequate to the task of properly compensating maritime workers for their injuries, and sought to address this deficiency by improving the remedy available under federal law. H.R. Rep. No. 1441, 92nd Cong., 2nd Sess. (1972), reprinted in 1972 U.S.Code Cong. & Admin. News, p. 4698.

*v. Brunswick Corp.,* 333 F.Supp. 221 (W.D. Va.1971).

We thus agree with the Benefits Review Board that Jenkins was not, solely by reason of his "election" to initially seek compensation in proceedings before the State Industrial Commission, barred from later filing a claim or receiving an award for the same alleged injury under the Longshoremen's Act.

–II–

■ Petitioner's reliance upon the doctrine of *res judicata* is similarly misplaced. Committed to the exclusive jurisdiction of a federal forum, Jenkins' claim for longshoremen's benefits neither was nor could have been litigated in the state proceedings. It constituted a cause of action distinct from that upon which the judgment of the Industrial Commission was based. Because a prior judgment is *res judicata* only as to demands involving the same cause of action, the denial of the claim under state law could not operate as a judgment in bar of the federal cause. *See Lawlor v. National Screen Service,* 349 U.S. 322, 329, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *Commissioner v. Sunnen,* 333 U.S. 591, 597–598, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *International Ass'n. of Mach. & Aero. Wkrs. v. Nix,* 512 F.2d 125, 131 (5 Cir. 1975); *Shea v. Texas Employers' Insurance Association,* 383 F.2d 16, 18 (5 Cir. 1967).

–III–

The employer also contends that the prior action of the State Commission rendered a federal award improper under the "Full Faith and Credit" clause, Art. IV, Section 1, of the Federal Constitution. But even assuming that under the reasoning of *Magnolia Petroleum Co. v. Hunt,* 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943), the adjudication of a state compensation claim could in some circumstances bar later proceedings under the federal Act, it is obvious, especially from our discussion of the "exclusivity" provision of the Virginia statute, that the reasoning of *Industrial Commission v. McCartin,* 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140 (1947), not *Magnolia,* is controlling in this case, and that no valid "full faith and credit" issue is raised by the federal award.

■ If "full faith and credit" is invoked by the petitioner "as a vehicle for applying collateral estoppel," *Artrip v. Califano,* 569 F.2d 1298, 1299 (4 Cir. 1978), then we agree with the Review Board that Virginia's conclusion that Jenkins' disease was not caused by his work [6] was not, by reason of collateral estoppel, binding upon the federal finder of fact. The standard of proof required to establish the work-relatedness of Jenkins' injury differed as between the two proceedings. With the possible exception of certain cases involving death, *see Southern Motor Lines Company v. Alvis,* 200 Va. 168, 104 S.E.2d 735, 738 (1958), Virginia awards compensation only if the claimant proves by "a preponderance of evidence" that his injury arose out of and in the course of his employment. *Conner v. Bragg,* 203 Va. 204, 123 S.E.2d 393, 396 (1962); *Rogers v. Williams,* 196 Va. 39, 82 S.E.2d 601, 602 (1954); *Norfolk & Washington Steamboat Co. v. Holladay,* 174 Va. 152, 5 S.E.2d 486, 488 (1939); *Crews v. Mosley Bros.,* 148 Va. 125, 138 S.E. 494, 495 (1927). "If the evidence shows that it is just as probable that the disability resulted from a cause which is not compensable, as it is that it resulted from one which is compensable, the claimant has not sustained the burden of proof." *Southall v. Eldridge Reams, Inc.,* 198 Va. 545, 95 S.E.2d 145, 147–148 (1956). In contrast, an administrative law judge considering a claim under

---

**6.** The precise conclusion of the commissioner who originally heard the state claim was that "[t]here is no sufficient medical evidence presented that the welding smoke caused the underlying condition or caused permanent damage or worsening of this disease of life and it is so found." Appendix at 31. The Industrial Commission affirmed upon the basis that "[t]he evidence failed to establish that the working conditions caused the bronchial condition or aggravated it to the point that the claimant was disabled * * *". Appendix at 32.

the Longshoremen's Act may enter a finding of work-relatedness based upon a less stringent evaluation of the evidence offered by the claimant. *See Young & Company v. Shea*, 397 F.2d 185, 188–189 (5 Cir. 1968), *cert. denied*, 395 U.S. 920, 89 S.Ct. 1771, 23 L.Ed.2d 237 (1969); *Strachan Shipping Company v. Shea*, 276 F.Supp. 610, 612–614 (S.D.Tex.1967), *aff'd. per curiam*, 406 F.2d 521 (5 Cir. 1969), *cert. denied*, 395 U.S. 921, 89 S.Ct. 1773, 23 L.Ed.2d 238 (1969); Longshoremen's and Harbor Workers' Compensation Act, § 20, 33 U.S.C. § 920 (1970). *See also Swinton v. J. Frank Kelly, Inc.*, 180 U.S.App.D.C. 216, 222–225, 554 F.2d 1075, 1081–1084 (1976), *cert. denied*, 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976). Relitigation of an issue is not precluded by the doctrine of collateral estoppel where the party against whom the doctrine is invoked had a heavier burden of persuasion on that issue in the first action than he does in the second, or where his adversary has a heavier burden in the second action than he did in the first. Restatement (Second) of Judgments, § 68.1(d), comment f at 38–39, Reporter's Notes at 46 (Tent. Draft No. 4, 1977); *Young & Company v. Shea, supra; In re Four Seasons Securities Laws Litigation*, 370 F.Supp. 219, 232–236 (W.D.Okl. 1974); *Strachan Shipping Company v. Shea, supra.*

–IV–

As to petitioner's contention that Jenkins' Longshoremen's claim was untimely filed, the facts are undisputed. Jenkins experienced severe coughing spells in December and January, 1973–4, while engaged in welding. He visited the employer's clinic on January 7, 1974, where he was told by a nurse that he had a cold and should avoid welding smoke. On January 14th, the employer's doctor confirmed Jenkins' suspicion that his cough was related to his exposure to welding fumes. Dr. Gillespie diagnosed the problem as "bronchitis aggravated by welding smoke" which would clear up if Jenkins would weld only in open areas. But the coughing recurred, and during his sixth and last visit with the employee on August 30, 1974, the doctor strongly suggested that Jenkins transfer out of welding altogether, telling him that he would be entitled to compensation.

Two of the employer's other physicians thereafter treated Jenkins, but told him that Dr. Gillespie was wrong, that his bronchitis was not occupational, and that it would be compensable only as a personal illness. Jenkins then received some payments under a non-occupational group disability insurance policy and transferred to another department. In September of 1974, the employer's medical director told Jenkins that he had recovered. Planning to return to welding, Jenkins then visited an independent physician. There, in October of 1974, he learned for the first time that he, in fact, had emphysema. This diagnosis was confirmed by several doctors.

Jenkins' Longshoremen's claim was filed in June, 1975, which was more than one year after he was aware that his coughing was work-related, but less than one year after he learned that he had emphysema, not bronchitis. The award that he eventually received was based upon a finding that he had emphysema. Section 13(a) of the Longshoremen's Act, 33 U.S.C. § 913(a) (as amended, 1972), provides:

> "Except as otherwise provided in this section, the right to compensation for disability or death under this chapter shall be barred unless a claim therefore is filed within one year after the injury or death * * *. The time for filing a claim shall not begin to run until the employee or beneficiary is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury or death and the employment."

The employer maintains that because Jenkins was aware of the relationship between the welding smoke and his coughing problem in January of 1974, the statute requires that the limitations period be calculated from that date, and as a result that the filing of the claim was untimely. The Benefits Review Board rejected this view, agreeing with the administrative law judge that under the statute the time for filing a

claim did not begin to run until October, 1974, when the claimant first learned that his work-related lung condition was not simple bronchitis, but that his "true injury" was emphysema. We affirm.

In conditioning the commencement of the limitations period upon the employee's awareness "of the relationship between the injury * * * and the employment," Section 13(a) obviously presupposes the employee's awareness that "the injury" exists. "Injury" is a term of art, defined to include "such occupational disease or infection as arises naturally out of such employment." 33 U.S.C. § 902(2).[7] Until an employee is aware, or by the exercise of reasonable diligence should be aware, that he has a disease, he cannot possibly be expected to arrive at a judgment as to whether or not it bears some causal relationship to his work.

 Here it is undisputed that Jenkins did not know until October of 1974 that he had the emphysema for which he was eventually awarded compensation. It follows, as a factual matter, that he was not aware until at least that time of the relationship between the emphysema, or its aggravation, and his employment. Concededly, there is nothing talismanic about the medical name of a disease, and if Jenkins had been apprised earlier of the distinctive features, but not the name, of his affliction, he might reasonably have been expected to have also sooner obtained or formed some opinion as to its work-relatedness. But such was not the case. In the months preceding October, the claimant was consistently told that he had bronchitis, an infectious disease which he was informed would improve and could be cured with medical care; this condition differs markedly in its

nature and likely consequences from emphysema, a disease found by the administrative law judge to be of a serious nature, and which would prevent Jenkins from resuming his trade. The Act does not require an employee to timely file a claim based upon a misdiagnosis in order to preserve his right to compensation for the more drastic disability which a correct diagnosis later shows resulted from the injury. See Cooper Stevedoring of La., Inc. v. Washington, 556 F.2d 268 (5 Cir. 1977); Stancil v. Massey, 141 U.S.App.D.C. 120, 436 F.2d 274 (1970).[8]

 The petitioner emphasized, however, that at the outset of the administrative hearing claimant's counsel agreed with the statement that the "date of injury" was January 7, 1974. Notwithstanding the proof that it was not until October that Jenkins was aware of the nature and gravity of his true injury, it is contended that this agreement of counsel amounted to an oral stipulation which was binding on the administrative law judge that the filing period began to run on January 7, 1974.

From a review of the record, we are not convinced that the claimant intended this statement to mean anything more than that he was exposed to the welding smoke on January 7th and realized then that his coughing was associated with such exposure. Our discussion above of the application of Section 13(a) to the facts of this case demonstrates that there is nothing inconsistent between this admission and the conclusion that the statutory filing period commenced in October. While a literal reading of the first sentence of Section 13(a) might mechanically be applied to counsel's statement in a manner which would support the

---

7. The statutory term "injury" also encompasses aggravations of pre-existing conditions. Baltimore & O.R. Co. v. Clark, 59 F.2d 595 (4 Cir. 1932).

8. That the claimant was in fact unaware of his true injury until October is not necessarily dispositive of the limitations issue. Jenkins could not sit on his rights, and if, in the exercise of reasonable diligence, he should have known earlier that he had emphysema instead of bronchitis, then the timeliness of his claim would turn upon the further question of when he

should have been aware that it was work-related. Here, however, the employer does not argue that Jenkins was remiss in not obtaining a diagnosis of emphysema earlier. Such a contention would fail in any event in view of the claimant's repeated consultations with the petitioner's own medical experts and their misdiagnoses. See Cooper Stevedoring of La., Inc. v. Washington, supra; Stancil v. Massey, supra; Aerojet-General Shipyards, Inc. v. O'Keeffe, 413 F.2d 793 (5 Cir. 1969).

employer's argument, such an application would ignore the last sentence of the Section which is addressed to cases of this kind. The administrative law judge obviously did not interpret counsel's statement as foreclosing inquiry into the factual question of when the claimant first became aware that his condition was serious, and in view of the overwhelming evidence which supports the factfinder's conclusion on that issue we are not inclined to set it aside.

–V–

Finally, the petitioner argues that substantial evidence did not support the finding of a causal relationship between Jenkins' employment and his emphysema or the aggravation thereof. It cites as error the administrative law judge's refusal to credit the testimony of the employer's medical director, Dr. Stallard, who opined at the hearing that Jenkins' lung condition resulted from cigarette smoking and was "not precisely related to his welding exposure."

Although in our opinion the medical evidence was not overwhelmingly in favor of either the claimant or the employer, it is not the province of this court to set aside an administrative law judge's finding as to work-relatedness if it is consistent with the law and supported by substantial evidence in the record considered as a whole. *Cardillo v. Liberty Mutual Insurance Co.*, 330 U.S. 469, 477–478, 67 S.Ct. 801, 91 L.Ed. 1028 (1947). Here, Jenkins testified that his symptoms did not predate his employment, and there was no evidence that he had the disease even at the time of his pre-employment physical. There was no dispute that his respiratory difficulties became symptomatic only after he was exposed to welding smoke at work, and expert medical testimony, including that of Dr. Stallard, established that it is possible for welding smoke to aggravate the condition of emphysema, particularly in a person who may be suffering from a pre-existing, smoking-related breathing problem. That

Jenkins now suffers permanent lung damage, emphysema, is conceded by even Dr. Stallard. In light of the express statutory presumption that an injury arising during the course of employment is compensable, 33 U.S.C. § 920(a),[9] we are of the opinion that, "in the absence of substantial evidence to the contrary," this evidence was sufficient to support the finding of causation and to justify an award upon the basis that the welding smoke either caused or aggravated the employee's respiratory condition. *See Swinton v. J. Frank Kelly, Inc., supra,* 180 U.S.App.D.C. at 223–226, 554 F.2d at 1082–1085; *Wheatley v. Adler,* 132 U.S. App.D.C. 177, 181–183, 407 F.2d 307, 312–314 (1978); *Marra Bros. v. Cardillo,* 154 F.2d 357 (3 Cir. 1946).

*ORDER AFFIRMED.*

---

9. Section 20 of the Longshoremen's Act, 33 U.S.C. § 920, provides in part:

"In any proceeding for the enforcement of a claim for compensation under this chapter

it shall be presumed, in the absence of substantial evidence to the contrary—

(a) That the claim comes within the provisions of this chapter."