COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Haley and Beales
Argued at Chesapeake, Virginia


VICTORIA M. McWHORTER

MEMORANDUM OPINION[*] BY
v.        Record No. 2063-07-1                    JUDGE JAMES W. HALEY, JR.
                                                  MAY 6, 2008

WILLIAMSBURG/JAMES CITY COUNTY AND
   COMMUNITY ACTION AGENCY, INC.
   AMERICAN HOME ASSURANCE COMPANY


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Victoria M. McWhorter, *pro se*.

          Brian L. Sykes (Lisa L. Thatch; Vandeventer Black LLP, on brief),
          for appellees.


     Victoria M. McWhorter maintains the Workers' Compensation Commission ("the

commission") erred:  (1) in concluding there was no causal relationship between her March 7,

2006 compensable injury and her claims for medical treatment subsequent to September 29,

2006, and (2) in denying her a rehearing upon that issue.[1]  Finding no error, we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] In her opening brief, McWhorter offers no principles of law, argument, or authorities
related to her claim for a rehearing. Accordingly, we do not address that issue, considering it
waived.  Rule 5A:20(e); Budnick v. Budnick, 42 Va. App. 823, 833, 595 S.E.2d 50, 55 (2004);
Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).  See Jay v.
Commonwealth, ____Va. ____, ____ S.E.2d ____ (Apr. 18, 2008).
          Rule 5A:22 limits arguments in a reply brief to those responding to the "contentions
made in the brief of appellee."  Appellees moved to strike McWhorter's reply brief on the
grounds it advanced additional arguments in violation of the limitation in Rule 5A:22.  We
denied the motion, but we decline to consider any such additional arguments in the reply brief, in
accordance with Rule 5A:22.

FACTS

McWhorter, aged 50, suffered a compensable injury to her left knee while employed by Williamsburg/James City County Community Action, Inc. ("Williamsburg"). She had been employed by Williamsburg since October 2003. Williamsburg agreed to an award of various disability periods and medical treatment through September 28, 2006, and a 6% permanent impairment of the left knee as of that date.[2]

Williamsburg maintained, however, that any actual or proposed medical treatment subsequent to September 29, 2006 was not causally related to the March 7, 2006 injury, but was rather related to a pre-existing condition. The *post* September 28, 2006 medical treatment that McWhorter sought included a total left knee replacement (and associated treatment) and also treatment for her right knee.

The record shows that McWhorter had surgeries on her left knee by Hampton Roads Orthopaedic Associates in 1995, 1996, and 1999. In 1995, she advised Hampton Roads that she had had prior operations: "Left knee and partial removal of *right* kneecap . . . September 1987." (Emphasis supplied). At the hearing, McWhorter admitted she had been in an automobile accident in 1987 in which her right knee "banged" into the dashboard and that after being taken to the hospital by ambulance, that knee was "stitched up."

She further acknowledged that she had been diagnosed with left knee osteoarthritis before 1999, that she had received a number of injections in her left knee in 2000, and that she had been treated by Hampton Roads for left *and right* knee complaints in February, March, July, and August, 2003, before she became employed by Williamsburg.

---

[2] On May 8, 2006, McWhorter was authorized to return to work at Williamsburg with light duty restrictions. Soon thereafter she was advised that due to a lack of continued funding for the agency she would be terminated effective June 30. From June 19, 2006, to October 15, 2006, she worked for Sentara Enterprise Home Health. On October 16, 2006, she was excused from work for one week by a doctor of osteopathy, Glenn Rauchwarg, for right knee problems.

Following the March 7, 2006 accident, McWhorter was treated by Dr. Alexander L. Lambert, II. After an MRI, Dr. Lambert performed an arthroscopic partial medial meniscectomy on her left knee on April 14, 2006. A September 25, 2006 functional capacity evaluation reported a 6% permanent partial impairment to McWhorter's left lower extremity. On September 29, 2006, Dr. Lambert agreed with this percentage and noted McWhorter "has reached maximum medical improvement for this injury." Upon her request, he referred McWhorter to Dr. Charles E. Wilhelm as to potential left knee replacement, as he did not perform that surgery.

Dr. Wilhelm's November 29, 2006 notes reflect that McWhorter gave him no medical history of problems with her left knee before the March 7, 2006 accident. Nor did McWhorter disclose the 1987 injury to her right knee, or her right knee complaints to Hampton Roads prior to her beginning work at Williamsburg.[3] Dr. Wilhelm noted the possibility that "the problems she has of the right leg *without any previous history of trauma there* are associated with the stress that is applied . . . to take care of the arthritic left leg." (Emphasis supplied). Dr. Wilhelm stated that while her right knee problems "could be associated with the March 7 fall . . . [that relationship] would not be known until the time of surgery." The record does not contain any medical evidence from Dr. Wilhelm making that causal connection, following the surgery on her right knee on December 5, 2006.

Dr. Sheldon L. Cohn conducted an independent medical examination ("IME") on McWhorter on January 24, 2007. He reported:

> I do not believe the need for total (left) knee replacement was due
> to her work related injury, but is due to her pre-existing arthritis
> . . . . [A]lthough Ms. McWhorter may well need further surgical
> intervention to her right knee, I do not believe this is related to her

---

[3] McWhorter testified she did advise Dr. Wilhelm of this history.

- 3 -

work related injury. These opinions are expressed to a degree of medical certainty.

On February 9, 2007, Dr. Lambert responded to a questionnaire. He was in agreement with Dr. Cohn's IME report. He stated with a reasonable degree of medical probability that (1) McWhorter had reached maximum medical improvement for her March 7, 2006 injury by September 29, 2006; and (2) treatment and disability, and proposed treatment, for both McWhorter's left and right knees after September 29, 2006, are "related to Ms. McWhorter's degenerative arthritis and unrelated to the 3/7/06 injury."

Dr. R. Brick Campbell conducted a medical records review addressing the right knee. He concluded "to a reasonable degree of medical certainty" in a February 16, 2007 report that: "I do not see a direct causal connection of her right knee complaints to the left knee injury . . . she appears to have ongoing degenerative arthritis of the left knee . . . ."

The only medical evidence submitted in support of McWhorter's claim of causality (right knee only) was a December 22, 2006 letter from Glenn C. Rauchwarg, a doctor of osteopathy. He wrote: "The initial injury . . . occurred March 7, 2006. Since that time her overall condition continued to deteriorate and most recently she has required surgery on her contralateral knee. This developed as a result of her shift in weight and gait due to her initial injury." Dr. Rauchwarg does not state his opinion is offered to any degree of medical certainty or probability.

Following a hearing on the matter, by opinion dated March 6, 2007, Deputy Commissioner Lee denied McWhorter's claim for left knee replacement surgery, for the December 5, 2006 right knee surgery and related treatment, and any left knee treatment

subsequent to September 29, 2006. The deputy commissioner concluded McWhorter's claims were "not causally related to her March 7, 2006 left knee industrial accident."[4]

An appeal of the deputy commissioner's decision was affirmed as to the question of causality by a unanimous decision of the commission rendered July 31, 2007.

ANALYSIS

> The substance of the claimant's contention on appeal is that the finding of the Commission as to the lack of proof of causal connection is contrary to the weight of the evidence. Since the determination of this issue is purely factual, under well-settled principles our inquiry is limited to ascertaining whether there is credible evidence to sustain the Commission's finding. If so, that finding is binding on us.

Southall, Adm'r v. Reams, Inc., 198 Va. 545, 546, 95 S.E.2d 145, 146 (1956); see also Mills v. Va. Elec. & Power Co., 197 Va. 547, 551, 90 S.E.2d 124, 127 (1955).

In Daniel Construction v. Baker, 229 Va. 453, 457, 331 S.E.2d 396, 398 (1985), the Virginia Supreme Court reiterated that "[t]he burden was upon the claimant to satisfy the Commission by a preponderance of the evidence . . . that the disability was causally related to his industrial accident." (citing Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983); Ins. Mgmt. Corp. v. Daniels, 222 Va. 434, 438-39, 281 S.E.2d 847, 849 (1981)); see also Volvo Truck Corp. v. Hedge, 1 Va. App. 195, 199-200, 336 S.E.2d 903, 906 (1985). "Only medical treatment resulting from an accident is compensable." McGregor v. Crystal Food Corp., 1 Va. App. 507, 509, 339 S.E.2d 917, 919 (1986).[5]

---

[4] McWhorter was represented by counsel at the hearing before the deputy commissioner. Thereafter, McWhorter made ethical charges against her counsel. McWhorter proceeded *pro se* before the full commission and is, likewise, *pro se* in this Court.

[5] These cases were decided pursuant to Code § 65.1-88, predecessor to current Code § 65.2-603.

We have repeatedly held that "[t]he commission's determination regarding causation is a finding of fact." Tex Tech Indus., Inc. v. Ellis, 44 Va. App. 497, 504, 605 S.E.2d 759, 762 (2004); see also Marcus v. Arlington County Bd. of Supervisors, 15 Va. App. 544, 551, 425 S.E.2d 525, 530 (1993). We defer to the commission in reviewing factual findings. Code § 65.2-706(A); Hawks v. Henrico County Sch. Bd., 7 Va. App. 398, 404, 374 S.E.2d 695, 698 (1988). "If there is evidence, or reasonable inferences can be drawn from the evidence, to support the Commission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding." Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986); see also Perry v. Delisle, 46 Va. App. 57, 64, 615 S.E.2d 494, 495 (2005) (*en banc*); Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 174, 468 S.E.2d 152, 153 (1996).

Under our standard of review, "[appellate courts] do not judge the credibility of witnesses or weigh the evidence on appeal." Celanese Fibers Co. v. Johnson, 229 Va. 117, 121, 326 S.E.2d 687, 690 (1985). Rather, "the commission [is] free to decide which evidence was more credible and should be weighed more heavily." Thompson v. Brenco, Inc., 38 Va. App. 617, 624, 567 S.E.2d 580, 584 (2002). That deference is applicable to conflicting medical opinions. In Ga.-Pac. Corp. v. Robinson, 32 Va. App. 1, 5, 526 S.E.2d 267, 268 (2000), we noted:

> [T]he Supreme Court has held that the "question [of causation] raised by 'conflicting expert medical opinions' is one of fact." Eccon Constr. Co. v. Lucas, 221 Va. 786, 790, 273 S.E.2d 797, 799 (1981). Thus, the commission's "finding upon conflicting medical evidence that a certain condition does or does not exist is . . . a conclusive finding of fact." McPeek v. P.W. & W. Coal Co., 210 Va. 185, 188, 169 S.E.2d 443, 445 (1969).

See also Amelia Sand Co. v. Ellyson, 43 Va. App. 406, 413, 598 S.E.2d 750, 752 (2004). Though not necessarily of a conclusive nature, "the opinion of the treating physician is entitled to great weight." H. J. Holz & Son, Inc. v. Dumas-Thayer, 37 Va. App. 645, 655, 561 S.E.2d 6, 11 (2002)

(citing Fingles Co. v. Tatterson, 22 Va. App. 638, 641, 472 S.E.2d 646, 647 (1996)); see also

United Airlines, Inc. v. Sabol, 47 Va. App. 495, 501-02, 624 S.E.2d 692, 695 (2006).

Finally, on appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the party prevailing below. Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 72, 577 S.E.2d 539, 539 (2003); R.B. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

On brief, McWhorter does not address our standard of review of factual findings as to causality made by the commission, nor does she address the evidentiary weight to be granted the medical opinions in the record.

Rather, she cites Southern Iron Works, Inc. v. Wallace, 16 Va. App. 131, 428 S.E.2d 32 (1993). We held: "A finding that a pre-existing condition was 'accelerated or aggravated' by an injury sustained in an industrial accident establishes a causal connection between the injury and the 'disability resulting therefrom is compensable . . . .'" Id. at 134, 428 S.E.2d at 34 (quoting Olsten of Richmond v. Leftwich, 230 Va. 317, 320, 336 S.E.2d 893, 895 (1985)).

We further wrote: "This finding [of causality] was based upon the uncontradicted opinion of Dr. Alexander, who stated that the *injury* to claimant's back aggravated a quiescent condition of arthritis in the left hip. The evidence showed that before the back injury, the arthritic condition was asymptomatic." Id. at 133, 428 S.E.2d at 33 (emphasis in original).

We find McWhorter's reliance upon Southern Iron misplaced, for three reasons.

First, in Southern Iron there was a finding of causality by the commission, one entitled to deference under our standard of review. Here, the commission found as a fact there was no causal relationship between McWhorter's March 2006 accident and the claims they considered.

Second, unlike the facts in <u>Southern Iron</u>, McWhorter's condition prior to her accident was not "quiescent," nor was she "asymptomic." Indeed, the record is replete with her complaints, and treatment, as to her knee, or knees, from at least 1999, up to August 2003, within two months of her employment by Williamsburg.

Finally, in <u>Southern Iron</u>, the uncontradicted expert medical opinion supported a causal relationship. Here, three experts, Dr. Lambert, the treating physician, Dr. Cohn, and Dr. Campbell, all denied the existence of a causal relationship. Only Dr. Rauchwarg opined as to a causal relationship between her accident and her right knee alone. And his opinion, as noted above, was not expressed with any degree of medical certainty or probability. <u>See</u> Code § 8.01-399(B) ("Only diagnosis offered to a reasonable degree of medical probability shall be admissible at trial.").

Applying our standard of review, the decision of the commission is affirmed.

<u>Affirmed</u>.