**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Plaintiff–Appellee,**

v.

**Leroy JACKSON, Defendant–Appellant.**

Nos. 85–2583, 85–2690.

United States Court of Appeals, Fifth Circuit.

Dec. 13, 1988.

Richard Schechter, Schechter, Eiseman & Solar, Houston, Tex., for Jackson.

Thomas C. Fitzhugh, III, Houston, Tex., for amicus curiae Highlands Ins. Co. and Delaware North.

W. Robins Brice, Houston, Tex., for amicus curiae West Gulf Maritime (on behalf of plaintiff-appellee).

Reagan Wm. Simpson, Steven Lynn Roberts, Fulbright & Jaworski, Houston, Tex., Arthur R. Miller, Cambridge, Mass., Stephen Pate, Houston, Tex., for Texas Employers' Ins. Assn.

Before CLARK, Chief Judge, BROWN, GEE, RUBIN, REAVLEY, POLITZ, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES and SMITH, Circuit Judges.[*]

GARWOOD, Circuit Judge:

This case involves the authority of a federal district court to enjoin the prosecution of a previously filed state court civil suit and declare the purported state law causes of action therein asserted preempted by the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950.

The state suit was brought by appellant Leroy Jackson (Jackson), a workman who had been injured in the course of his LHWCA-covered employment, against appellee, Texas Employer's Insurance Association (TEIA), his employer's LHWCA insurer, seeking damages for mental anguish, stress, and anxiety consequent on TEIA's alleged fraud and bad faith in having delayed payment of his LHWCA compensation benefits. Nearly a year later, TEIA filed this action against Jackson in the United States District Court for the Eastern District of Texas, seeking to enjoin Jackson's prosecution of the state suit and to declare that its claims were preempted by the LHWCA. Shortly before the state suit was scheduled to go to trial, the district court enjoined Jackson's prosecution of it and rendered the declaratory judgment that Jackson's state law claims were preempted by the LHWCA. *Texas Employers' Insurance Association v. Jackson*, 618 F.Supp. 1316 (E.D.Tex.1985). Jackson appealed and a panel of this Court set aside the injunction as contrary to the Anti–Injunction Act, 28 U.S.C. § 2283,[1] but affirmed the grant of declaratory relief, which it held to be proper under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.[2] *Texas Employers' Insurance Asso-*

---

[*] Judge King is recused, and therefore did not participate in this decision.

Judge John M. Duhe, Jr. was not a member of the Court when this case was submitted to the Court en banc and did not participate in this decision.

[1] Section 2283 provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

[2] Section 2201(a) provides:

"(a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1954 or a proceeding under section 505 or 1146 of title 11, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall

*ciation v. Jackson,* 820 F.2d 1406 (5th Cir. 1987). Agreeing with the former but not the latter determination, this Court en banc now holds that whether or not Jackson's claims were preempted by the LHWCA, the district court nevertheless lacked authority to issue the injunction by virtue of the Anti–Injunction Act, and that it and allied principles likewise prevented the declaratory relief sought and granted below. As the district court was not authorized to grant any of the relief sought by TEIA, we accordingly reverse the judgment below and order the case dismissed.

### Context Facts and Prior Proceedings

In July 1978, Jackson injured his back and right ankle when he fell on a barge in navigable waters in the course of his employment as a shipfitter for Gulfport Shipbuilding Company (Gulfport) in Port Arthur, Texas. Jackson received medical treatment and returned to the same employment with Gulfport on October 30 of that year. Thereafter and until May 1982, Jackson continued his work as shipfitter for Gulfport, with intermittent absences from work and medical treatment on account of his July 1978 injury. On May 3, 1982, Jackson seriously reinjured his back in the course of the same employment with Gulfport, and he has not returned to work since. On July 6, 1982, Jackson filed a formal claim for total permanent disability benefits under the LHWCA. *See* 33 U.S.C. § 908.

Throughout all this time, Gulfport was an employer subject to the LHWCA, TEIA

was Gulfport's LHWCA compensation insurer, and Jackson was a Gulfport employee covered by the Act. *See* 33 U.S.C. §§ 902(3), 902(4), 932(a)(1).

TEIA paid Jackson's medical expenses and temporary total LHWCA disability benefits until April 4, 1983, when it suspended payment. TEIA had previously, in late July 1982, filed a formal "controversion" of entitlement to benefits pursuant to 33 U.S.C. § 914(d) on the ground that the amount of permanent disability "is uncertain at this point" because Jackson had "not yet reached maximum improvement."[3] Payment of benefits remained suspended from April 4, 1983 until shortly after a July 6, 1983 informal conference before a deputy commissioner,[4] at which time TEIA agreed to resume payments. Jackson was medically reexamined in August 1983, and on September 14, 1983, TEIA again suspended payment of benefits and filed another controversion, this time on the ground that Jackson had reached maximum recovery and that any disability he had was not due to his injury but to an arthritic condition. Following a settlement conference at which a Department of Labor claims examiner recommended payment, TEIA, on September 29, 1983, again filed another controversion objecting to that recommendation and continued to withhold benefits. Compensation remained unpaid until the final award was made in September 1984.

On May 3, 1984, Jackson's LHWCA claim was heard before a Department of Labor

have the force and effect of a final judgment or decree and shall be reviewable as such." Section 2202 provides:

"Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

**3.** Section 914(d) provides in part:

"If the employer controverts the right to compensation he shall file with the deputy commissioner ... a notice in accordance with a form prescribed by the Secretary, stating that the right to compensation is controverted, ... and the grounds upon which the right to compensation is controverted."

Under section 914(a), LHWCA compensation is payable promptly and without an award, "except where liability to pay is controverted by the employer." Section 914(b) requires payment within fourteen days after the employer has knowledge of the injury and thereafter semimonthly. Section 914(e) provides:

"If any installment of compensation payable without an award is not paid within fourteen days after it becomes due, as provided in subdivision (b) of this section, there shall be added to such unpaid installment an amount equal to 10 per centum thereof, which shall be paid at the same time as, but in addition to, such installment, unless notice is filed under subdivision (d) of this section...."

**4.** *See* 33 U.S.C. §§ 914(h), 919(c), 940.

administrative law judge (ALJ) pursuant to 33 U.S.C. §§ 919(c), (d), and (e). On September 14, 1984, the ALJ awarded Jackson disability benefits on account of his July 1978 and May 1982 injuries, holding that he had been totally and permanently disabled since May 3, 1982. Jackson was also granted preaward interest on accrued, unpaid benefits and attorneys' fees pursuant to 33 U.S.C. § 928(a).[5] This award was filed in the office of the deputy commissioner on September 28, 1984 and, neither party having appealed to the Benefits Review Board, became final and unappealable thirty days thereafter. 33 U.S.C. §§ 919(e), 921(a), 921(b) (appeal from the Benefits Review Board would have been to this Court; § 921(c)). TEIA promptly paid the award in full.

Meanwhile, on June 7, 1984, after the ALJ hearing but before her formal award, Jackson sued TEIA in the 60th District Court of Jefferson County, Texas. Jackson filed a First Amended Original Petition in that suit on May 1, 1985 and a Second Amended Original Petition on May 24, 1985. The suit alleged Jackson's July 1978 and May 1982 injuries and that these were covered by the LHWCA, with TEIA being the LHWCA insurance carrier of Jackson's employer, Gulfport. It sought damages, actual and exemplary, on account of "mental anguish, stress, anxiety and humiliation" suffered by Jackson as a result of TEIA's allegedly fraudulent and bad faith suspension of Jackson's LHWCA compensation benefits commencing in April 1983. Jackson alleged that TEIA knowingly induced a doctor to file a false medical report concerning him on the basis of which TEIA suspended his LHWCA benefits, and that TEIA knew he was entitled to such benefits but suspended payment solely in an effort to force him to settle for far less than his claim was worth, which pressures were especially severe as Jackson's LHWCA benefits were then his and his family's sole support. There was no allegation that Jackson ever did settle, or that

he did not ultimately receive all he was entitled to under the LHWCA; nor was any recovery sought of any amounts allegedly due under the LHWCA. Jackson's state court pleadings purported to assert a cause of action against TEIA in respect to these alleged facts under seven different theories of Texas law, *viz.*: a claim for false, misleading, unfair and/or deceptive acts under Article 21.21 of the Texas Insurance Code; a claim under the Texas Deceptive Trade Practices Act (Texas Business and Commerce Code, §§ 17.41, *et seq.*); and claims under Texas common law theories of bad faith insurance practices, fraud, intentional infliction of severe emotional distress, negligent infliction of severe emotional distress, and willful and wanton lack of care and concern for the health, safety, and welfare of others.

TEIA filed a "plea in bar," plea in abatement, and answer in the state court action on July 19, 1984. The plea in bar asserted in substance that the LHWCA preempted Jackson's claims. The plea in abatement requested abatement until the LHWCA proceedings were final. In its answer, TEIA asserted, in addition to a general denial, that Jackson was not a consumer under the Texas Deceptive Trade Practices Act, that neither that statute nor the Texas Insurance Code applied to the handling of LHWCA claims, and that the LHWCA was Jackson's exclusive remedy.

On January 11, 1985, the state trial court entered an order denying TEIA's plea in bar. Extensive discovery, including the taking of several depositions, ensued in the state court suit. It was set for trial for August 12, 1985, and later reset for August 26, 1985.

On May 23, 1985, TEIA filed the instant action against Jackson in the United States District Court for the Eastern District of Texas. The only relief sought was a preliminary and permanent injunction against Jackson's further prosecution of the state court suit, and declaratory judgment that

---

**5.** Attorneys' fees are expressly provided for by section 928(a). Interest is not expressly provided for, but apparently has been routinely awarded. The ALJ's decision expressly notes that

there was no objection to the award of attorneys' fees; nor does it indicate any objection to the interest award.

the LHWCA preempts Jackson's state law claims asserted in his state court suit and that the ALJ's September 1984 award in the LHWCA proceeding had become final and constituted *res judicata* of those claims. A copy of the ALJ's September 14, 1984 opinion and award and of Jackson's First Amended Original Petition in the state court suit were attached as exhibits to TEIA's complaint.

On August 8, 1985, the court below held a nonevidentiary hearing on TEIA's requested injunction, and on August 21, 1985, issued a temporary injunction which enjoined Jackson from further prosecution of his state suit. Jackson timely appealed. On September 30, 1985, the district court permanently enjoined Jackson from further prosecution of the state court action and declared that Jackson's claims asserted in the state suit were preempted by the LHWCA. Jackson again timely appealed, and his two appeals were consolidated in this Court.

 In granting the injunction, the district court ruled that the September 1984 ALJ award barred Jackson's state

suit under principles of *res judicata* and hence invoked the "to protect or effectuate its judgments" exception to the Anti–Injunction Act. It also ruled that the "as expressly authorized by Act of Congress" exception to the Anti–Injunction Act was applicable by reason of section 21(d) of the LHWCA, 33 U.S.C. § 921(d). 618 F.Supp. at 1323. The panel rejected both these determinations, and held that the Anti–Injunction Act was applicable and barred the grant of injunctive relief. 820 F.2d at 1415–17.[6] We agree. The panel also held, however, that the Declaratory Judgment Act was available and that resort to it was not precluded by the Anti–Injunction Act or related principles. 820 F.2d at 1420–21 (Judge Jones dissented from this holding, 820 F.2d at 1424–26). On the merits, the panel ruled that the LHWCA preempted Jackson's state law claims. 820 F.2d at 1411–14.[7] However, as explained below, we hold that regardless of any LHWCA preemption, the Anti–Injunction Act and allied principles prevent declaratory as well as injunctive relief respecting Jackson's pending and previously filed state suit.[8]

6. The remaining exception to the Anti–Injunction Act, the "where necessary in aid of its jurisdiction" exception, has not been urged by TEIA, was not relied on by the district court, and appears plainly unavailable. *See, e.g., Amalgamated Clothing Workers v. Richman Brothers*, 348 U.S. 511, 75 S.Ct. 452, 457, 99 L.Ed. 600 (1955); *Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 97 S.Ct. 2881, 2893, 53 L.Ed.2d 1009 (1977); *T. Smith & Son, Inc. v. Williams*, 275 F.2d 397, 407 (5th Cir.1960). When TEIA filed its suit, the ALJ's award had long since been paid in full and become final by lack of appeal, and no federal court had even potential jurisdiction over the ALJ's award or Jackson's claim for LHWCA benefits.

7. Jackson relied on *Martin v. Travelers Insurance Co.*, 497 F.2d 329 (1st Cir.1974), in arguing that his state law claims were not preempted by the LHWCA. The panel declined to follow *Martin*. 820 F.2d at 1414. In a later decision, another panel of this Court likewise declined to follow *Martin* and held that a state law cause of action for bad faith failure to pay LHWCA compensation when due was preempted by the LHWCA. *Atkinson v. Gates, McDonald & Co.*, 838 F.2d 808 *rehg. en banc denied*, 844 F.2d 788 (5th Cir.1988). Our holding concerning the Anti–Injunction Act and the Declaratory Judgment Act implies no disagreement with *Atkin-*

*son*, which remains the law of this Circuit unless overruled by subsequent contrary pronouncement of the Supreme Court or of this Court en banc.

The Texas law claims asserted by Jackson are of the general type later recognized by the Texas Supreme Court in *Aranda v. Insurance Company of North America*, 748 S.W.2d 210 (Tex.1988), which upheld a common-law action against an insurer for its bad faith in failing to timely pay benefits due under the Texas Workers' Compensation Act. In so holding, and in finding the action was not precluded by the Texas Workers' Compensation Act, *Aranda* in part relied on the "contractural nature of" the Texas Workers' Compensation Act and on the fact that "[t]he employee is thus a party to the [compensation insurance] contract." *Id.* at 212.

8. The panel also held that the district court had jurisdiction over TEIA's suit under 28 U.S.C. § 1331 because of the preemptive force of the LHWCA. 820 F.2d at 1417–20. Judge Jones dissented from this holding. *Id.* at 1422–24. The panel majority recognized that under the well-pleaded complaint rule, federal preemption is generally a defensive matter which does not give rise to federal question jurisdiction even in an action for declaratory judgment that a state law claim is preempted. *See Franchise Tax Board v. Construction Laborers Vacation Trust,*

## Injunction

*General principles*

Before considering the particular exceptions specified in the Anti–Injunction Act (note 1, *supra* ), some general observations concerning it may be helpful. Justice Black in *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970), remarked on the significance of the Act, originally passed in 1793, to "the essentially federal nature of our national government," and explained:

"When this Nation was established by the Constitution, each State surrendered only a part of its sovereign power to the national government.... One of the reserved powers was the maintenance of state judicial systems for the decision of legal controversies. Many of the Framers of the Constitution felt that separate federal courts were unnecessary and that the state courts could be entrusted to protect both state and federal rights. Others felt that a complete system of federal courts to take care of federal legal problems should be provided for in the Constitution itself. This dispute resulted in compromise. One 'supreme Court' was created by the Constitution, and Congress was given the power to create other federal courts....

"While the lower federal courts were given certain powers in the 1789 [Judiciary] Act, they were not given any power to review directly cases from state courts, and they have not been given such powers since that time.... Thus from the beginning we have had in this country two essentially separate legal systems. Each system proceeds independently of the other with ultimate review in this Court of the federal questions raised in either system.... Obviously this dual system could not function if state and federal courts were free to fight each other for control of a particular case. Thus, in order to make the dual system work ..., it was necessary to work out lines of demarcation between the two systems.... The 1793 anti-injunction Act was at least in part a response to these pressures." *Id.* 90 S.Ct. at 1742–43.

Hence, Justice Black concluded, the Act's "prohibition" of injunctions against state court proceedings "in part rests on the fundamental constitutional independence of the States and their courts." *Id.* 90 S.Ct. at 1743. More recently, the Court observed in a similar vein that section 2283 "is a necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of

463 U.S. 1, 103 S.Ct. 2841, 2848, 2850, 77 L.Ed. 2d 420 (1983). However, the panel majority held that here the LHWCA preemption was so pervasive and displacing as to bring the case within the rule of *Avco Corp. v. Aero Lodge No. 735, I.A. of M. & A.W.,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), and *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Judge Jones, in her dissent, viewed this as an unwarranted extension of *Avco* and *Taylor,* and considered that the case was governed by *Franchise Tax Board, Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987), *Lowe v. Ingalls Shipbuilding,* 723 F.2d 1173 (5th Cir.1984), and related decisions.

We need not and do not resolve this difficult issue, because we hold that even if the court below had jurisdiction and even if the LHWCA were completely preemptive, the district court nevertheless had no authority to enjoin prosecution of the previously filed and pending state action and declare its claims invalid, which was the *only* relief sought by TEIA's suit. Thus, regardless of how the jurisdictional issue is re-

solved, the result is exactly the same. While such pretermitting of a jurisdictional issue is rare, there is respected precedent for it in analogous circumstances. *See United States v. Augenblick,* 393 U.S. 348, 89 S.Ct. 528, 531, 21 L.Ed.2d 537 (1969) ("even if we assume, *arguendo,* that a collateral attack on a court-martial judgment may be made in the Court of Claims through a back-pay suit alleging a 'constitutional' defect in the military decision, these present cases on their facts do not rise to that level"); *Secretary of Navy v. Avrech,* 418 U.S. 676, 94 S.Ct. 3039, 3040, 41 L.Ed.2d 1033 (1974) (assuming, *arguendo,* that the court below had jurisdiction, on the merits there was no entitlement to relief, and so the jurisdictional issue is not decided); *Norton v. Mathews,* 427 U.S. 524, 96 S.Ct. 2771, 2775, 49 L.Ed.2d 672 (1976) ("[W]hichever disposition we undertake, the effect is the same. It follows that there is no need to decide the theoretical question of jurisdiction in this case. In the past, we similarly have reserved difficult questions of our jurisdiction when the case alternatively could be resolved on the merits in favor of the same party.").

federal and state courts" and that its prohibitions are "[d]ue in no small part to the fundamental constitutional independence of the States." *Chick Kam Choo v. Exxon Corp.*, —— U.S. ——, 108 S.Ct. 1684, 1689, 100 L.Ed.2d 127 (1988). We, too, have recognized that, in the words of Judge Wisdom writing for a distinguished panel of this Court, "the hands-off doctrine expressed in Section 2283 is to be considered in the light of the function of Section 2283 as a pillar of federalism." *T. Smith & Son, Inc. v. Williams*, 275 F.2d 397, 407 (5th Cir.1960) (Tuttle, Brown, and Wisdom.)

■ Similar considerations dictate that construction and application of section 2283 is not to be influenced by any "assumption ... that federal rights will not be adequately protected in the state courts," *Amalgamated Clothing Workers v. Richman Brothers*, 348 U.S. 511, 75 S.Ct. 452, 456, 99 L.Ed. 600 (1955), for

> "during more than half of our history Congress, in establishing the jurisdiction of the lower federal courts, in the main relied on the adequacy of the state judicial systems to enforce federal rights, subject to review by this Court.... During that entire period, the vindication of federal rights depended upon the procedure which petitioner attacks as so grossly inadequate that it could not have been contemplated by Congress. The prohibition of § 2283 is but continuing evidence of confidence in the state courts, reinforced by a desire to avoid direct conflicts between state and federal courts." *Id.* 75 S.Ct. at 456–57.

More specifically, the Court has clearly held that the only exceptions to section 2283 are those three expressly stated therein. Thus, in *Atlantic Coast Line*, the Court declared "[w]e cannot accept any ... contention" that "in certain circumstances a federal court may enjoin state court proceedings even if that action cannot be justified by any of the three exceptions," and proceeded to "hold that any injunction against state court proceedings ... must be based on one of the specific statutory exceptions to § 2283 if it is to be upheld." 90 S.Ct. at 1743. *See also Chick Kam Choo*, 108 S.Ct. at 1689 ("an injunction

staying state proceedings is proper only if it falls within one of the statutory exceptions"); *Amalgamated Clothing Workers*, 75 S.Ct. at 454 ("the prohibition [of section 2283] is not to be whittled away by judicial improvisation"). Further, it is settled that these "exceptions are narrow and are 'not [to] be enlarged by loose statutory construction.'" *Chick Kam Choo*, 108 S.Ct. at 1689 (quoting *Atlantic Coast Line*, 90 S.Ct. at 1743).

■ Moreover, it is likewise established that a claim of federal preemption—even one which is unmistakably clear—is not within any of the exceptions stated in section 2283 and hence does not suffice to authorize an injunction of state court proceedings. As stated in *Atlantic Coast Line*:

> "[A] federal court does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear.... This conclusion is required because Congress itself set forth the only exceptions to the statute, and those exceptions do not include this situation." 90 S.Ct. at 1743.

*See also Chick Kam Choo*, 108 S.Ct. at 1691 (quoting the first sentence set out above and stating "when a state proceeding presents a federal issue, even a preemption issue, the proper course is to seek resolution of that issue by the state court"); *T. Smith*, 275 F.2d at 404–05. This is true whether the preemption is that of federal maritime law, *Chick Kam Choo*, or the LHWCA, *T. Smith*, or the National Labor Relations Act, *Amalgamated Clothing Workers*.

■ Nor is the result any different because the federal preemption is such as to deprive the state court of *jurisdiction*. In *Weber v. Anheuser–Busch, Inc.*, 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546 (1955), the Supreme Court had before it, on direct review, a state court injunction of union picketing, and stated that "[t]he principal

question that the case raises" is "whether the state court had jurisdiction to enjoin" the union "or whether its jurisdiction had been preempted" by the National Labor Relations Act. *Id.* 75 S.Ct. at 484. The Court set aside the injunction, ruling that the state court lacked jurisdiction by virtue of the federal preemption. A week later, the Court decided *Amalgamated Clothing Workers,* which it described as involving a state court injunction of union conduct "under similar circumstances" to those of *Weber.* 75 S.Ct. at 453. However, in *Amalgamated Clothing Workers,* the union had procured a federal court injunction of the state court proceedings, and the issue was whether this was prohibited by section 2283. The Court noted that "[u]nder the decision in *Weber* ... we may assume that the [union] conduct in controversy ... is outside state authority." 75 S.Ct. at 454. It then proceeded to reject the argument that this sufficed to avoid the prohibition of section 2283:

> "[W]e cannot accept the argument ... that § 2283 does not apply whenever the moving party in the District Court alleges that the state court is 'wholly without jurisdiction over the subject matter, having invaded a field pre-empted by Congress.' No such exception had been established by judicial decision under former § 265. In any event, Congress has left no justification for its recognition now." *Id.* at 455 (footnote omitted).

Plainly, the Court held that a complete lack of state court subject matter jurisdiction, due to federal preemption, comes within none of the exceptions to section 2283 and provides no basis for avoiding the prohibition of section 2283. *Amalgamated Clothing Workers* has continued to be cited with approval for its holding in this respect. *See, e.g., Atlantic Coast Line,* 90 S.Ct. at 1747[9]; *Chick Kam Choo,* 108 S.Ct. at

1691. In *T. Smith,* we applied the above-quoted portion of *Amalgamated Clothing Workers* to conclude that section 2283 prevented a federal court from enjoining the state suit for state workers' compensation benefits of a longshoreman injured on a merchant vessel lying in navigable waters as against the argument, the validity of which we assumed, that the LHWCA and the rule of *Southern Pacific Co. v. Jensen,* 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), were completely preemptive of the state claims and that the case was one "involving exclusive federal jurisdiction." *See* 275 F.2d at 404–05.

■ Finally any doubts are to be resolved in favor of allowing the state court action to proceed. As the Court stated in *Atlantic Coast Line:*

> "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. The explicit wording of § 2283 itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion." 90 S.Ct. at 1748.[10]

*Protect or effectuate its judgments*

■ The "except ... to protect or effectuate its judgments" language of section 2283 has been referred to as the "relitigation exception." Its general function and purpose were described in *Chick Kam Choo* as follows:

> "The relitigation exception was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court. It is founded in the well-recognized concepts of *res judicata* and collateral estoppel." *Id.,* 108 S.Ct. at

**9.** We also observe that Justice Brennan, with whom Justice White joined, in his dissenting opinion in *Atlantic Coast Line, id.* 90 S.Ct. at 1748, stated: "Nor do I dispute the Court's holding on the basis of *Amalgamated Clothing Workers* ... that federal courts do not have authority to enjoin state proceedings merely because it is asserted that the state court is improperly as-

serting jurisdiction in an area preempted by federal law...."

**10.** It is, of course, also "settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding." *Id.* at 1743.

1690.[11]

Clearly, the ALJ award does not preclude Jackson's state suit claims under a collateral estoppel theory, and certainly not for purposes of the relitigation exception to section 2283. The ALJ award makes no determination whatever respecting the bad faith or good faith of TEIA in withholding payment to Jackson of LHWCA benefits, or of whether Jackson suffered emotional distress or the like as a result, or whether Jackson could recover damages on account thereof. Indeed, none of these matters are even alluded to in the ALJ award. Nor did Jackson ever seek any such determination or relief before the ALJ. It is plain that none of these matters were either litigated before or determined by the ALJ. Collateral estoppel, or "issue preclusion," requires, among other things, that the allegedly precluded issue have been "actually litigated and determined" in the prior action. *Restatement (Second) Judgments* § 26. *See also Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955) ("collateral estoppel ... precludes relitigation of issues actually litigated and determined in the prior suit"); *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *International Association of Machinists & Aerospace Workers v. Nix*, 512 F.2d 125, 132 (5th Cir.1975); Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4419 at 177 ("[b]asic statements of the requirements for issue preclusion demand that the issues have

been both actually litigated and actually decided") (footnote omitted).

These requirements have been stringently enforced for purposes of the relitigation exception to section 2283. Thus, in *Atlantic Coast Line*, the prior federal action had denied the railroad an injunction against the union's picketing, which the railroad sought on account of alleged union violations of the Railway Labor Act and the Interstate Commerce Act, the federal district court having ruled that the Railway Labor Act granted the union the right to strike. Subsequently, the railroad procured a state court injunction against the union on the ground that its strike was illegal under state law. The union then returned to the federal court and enjoined the state proceeding, contending that the injunction was authorized by the relitigation exception to section 2283. The Supreme Court disagreed, because the prior federal action had not expressly determined that the Railway Labor Act precluded an injunction on state law grounds.[12] *Id.* In *Chick Kam Choo*, the Court reaffirmed this holding, observing that "[t]he proper scope of the [relitigation] exception is perhaps best illustrated by this Court's decision in *Atlantic Coast Line, supra.*" 108 S.Ct. at 1690. *Chick Kam Choo* goes on to state:

> "[A]s *Atlantic Coast Line* makes clear, an essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction

**11.** The wording of section 2283, as well as the "by the federal court" language in the above quotation, may suggest that the judgment to be protected must be that of a federal court. Here all that is involved is the ALJ's September 1984 award, which had become final and unappealable, and which TEIA had fully paid, long before TEIA filed this suit.

However, like the panel, 820 F.2d at 1416 n. 10, we do not decide but merely assume, *arguendo* only, that the fact that what is here involved is an ALJ award, rather than a court judgment, does not of itself necessarily preclude resort to this exception.

We note that language in *International Association of Machinists & Aerospace Workers v. Nix*, 512 F.2d 125 (5th Cir.1975), may indicate that an NLRB ruling can be the basis for invoking the "relitigation exception" to section 1983.

However, in *Nix, prior* to the federal injunction suit, the NLRB ruling had been appealed to and affirmed by this Court and also, in a separate federal district court suit brought by the party who was later the state court plaintiff, had been held to be preclusive of the claims subsequently raised in the state suit. Thus in *Nix*, invocation of the relitigation exception did not rest only on the NLRB ruling, or even on its judicial affirmance, but also on the prior federal district court suit judgment that the NLRB ruling precluded the claims which were raised in the subsequent state suit. *Id.,* 512 F.2d at 131.

**12.** In fact, as the Supreme Court had earlier held, the Railway Labor Act *did* prevent such an injunction. *Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969).

insulates from litigation in state proceedings actually have been decided by the federal court. Moreover, *Atlantic Coast Line* illustrates that this prerequisite is strict and narrow. The Court assessed the precise state of the record and what the earlier federal order *actually* said...." *Id.*[13]

Given this standard—or, for that matter, any other reasonable standard—it cannot possibly be concluded that the ALJ actually decided adversely to Jackson any of the issues presented by his state suit.

■ TEIA contends, however, that the ALJ's award bars Jackson's state suit under the doctrine of claim preclusion, or "true" *res judicata*. While the bar of *res judicata*, in this sense, does not depend on the issues or theories actually litigated or decided in the prior case, it does require, among other things, an identity of cause of action or claims. *See, e.g., Restatement (Second) Judgments* §§ 18(1), 25; *Montana*, 99 S.Ct. at 973, 974; *Lawlor*, 75 S.Ct. at 867; *Nix*, 512 F.2d at 131. As explained in Wright, Miller and Cooper, *supra*, a single cause of action or claim cannot be "split" by advancing one part in an initial suit and attempting to reserve another part for a later suit. *Id.*, § 4402 at 8. Moreover, in determining whether a prior court judgment bars a later suit, we have generally applied a broad definition of "claim" or "cause of action," following the *Restatement* formulation in this respect. *See Nilsen v. City of Moss Point*, 701 F.2d 556, 559–62 (5th Cir.1983); *Restatement (Second) Judgments* §§ 24, 25. TEIA urges that Jackson's state suit claims for bad faith withholding of LHWCA compensation benefits and resulting emotional distress are a "part of the [same] transaction, or series of connected transactions, out of which" his claim before the ALJ for the LHWCA benefits themselves "arose," *id.*,

§ 24(1), and are hence the same claim or cause of action for purposes of claim preclusion. Accordingly, TEIA argues that this suffices to invoke the relitigation exception to section 2283. We disagree.

It may be doubted that TEIA's argument is consistent with the statement in *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966), that *res judicata* applies where the administrative agency "resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." Here, as noted, the ALJ resolved no disputed issues adversely to Jackson, and the issues of TEIA's bad or good faith and Jackson's emotional distress were simply not before or resolved by the ALJ, there was no opportunity to litigate them, and they were not litigated. Moreover, TEIA's argument likewise appears to be inconsistent with *Chick Kam Choo*'s admonishment that the relitigation exception "is strict and narrow" so that only "claims or issues which ... actually have been decided" in the prior proceeding as reflected by what the prior "order *actually* said" are protectable thereunder. 108 S.Ct. at 1690.

TEIA and Jackson have both consistently, and correctly, taken the position that TEIA's good faith or lack thereof in filing its controversions in the LHWCA proceedings, and its good faith or lack thereof in suspending payment of LHWCA compensation benefits pursuant thereto, were matters that were legally irrelevant to any relief Jackson was entitled to under the LHWCA or in the proceedings before the ALJ, as was also any emotional distress Jackson suffered as a result of such suspensions, and that the ALJ had no jurisdiction to pass on, or award Jackson anything by reason of, the matters asserted in his state suit.[14] Moreover, Jackson could re-

---

**13.** *See also Southern California Petroleum Corp. v. Harper*, 273 F.2d 715, 719 (5th Cir.1960) ("[A] complainant must make a strong and unequivocal showing of relitigation of the same issue" to avoid the bar of section 2283, and "[i]f we err, all is not lost. A state court is as well qualified as a federal court to protect a litigant by the doctrines of res judicata and collateral estoppel.").

**14.** This is not to say that the LHWCA does not preempt Jackson's state law claims. The point is that such a bar to those claims would arise from the LHWCA itself, regardless of whether there was any ALJ decision, and not from the ALJ award. That is the difference between preemption, which affords no basis for avoiding the bar of section 2283, and relitigation, which

cover LHWCA benefits only by going through administrative proceedings as provided in the LHWCA, including¹ the proceedings before the ALJ in which he was awarded all the relief available under the LHWCA. Thus, this case fits into a well-recognized exception to claim preclusion, as provided in *Restatement (Second) Judgments* § 26(1)(c), for instances where the relief sought or theory advanced in the first suit is cognizable only before a court of limited jurisdiction not competent to act on the theory advanced or relief sought in the second suit. This principle has particular applicability when claim preclusion is sought to be established on the basis of a prior administrative proceeding. As the *Restatement (Second) Judgments* explains:

"The qualifications and exceptions to the rule of claim preclusion have particular importance with respect to adjudications by administrative agencies. One important qualification has to do with the definition of 'claim' itself. In the context of civil actions in courts, the term 'claim' is broadly defined.... This broad definition reflects the fact that in modern practice judicial tribunals usually have comprehensive authority to adjudicate all contentions of fact and all legal theories that may arise from a transaction. Since a judicial tribunal has such comprehensive authority, a litigant may justly be required to avail himself of that authority and to assert in a single action all factual and legal contentions that might be made....

"In contrast, the jurisdiction of administrative agencies is usually defined in terms of specified substantive legal provisions, for example, workers' compensation.... Since the tribunal's authority is delimited in substantive legal terms, the tribunal ordinarily lacks authority to adjudicate claims arising out of the transaction in question but based upon other substantive legal premises. Thus, a workers' compensation commission usually lacks authority to consider claims for punitive damages for injuries intentionally inflicted on an employee in the course of employment.... These limitations on authority of the tribunal should carry corresponding limitations on the scope of 'claim' for purposes of the rule of claim preclusion.

"Furthermore, the exceptions stated in § 26(1)(c) and (d) are particularly important in considering claim preclusion with respect to an administrative agency determination. Section 26(1)(c) provides that preclusion is inapplicable to that part of a claim that is a possible basis for a second action where 'the plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the competency of the [tribunal]....'" *Id.* § 83, comment *g*.

Federal courts have routinely applied these principles. *See, e.g., United States v. Radio Corporation of America,* 358 U.S. 334, 79 S.Ct. 457, 468, 3 L.Ed.2d 354 (1959); *Parker v. Pavkovic,* 753 F.2d 1397, 1404 (7th Cir.), *cert. denied,* 473 U.S. 906, 105 S.Ct. 3529, 87 L.Ed.2d 653 (1985); *Newport News Shipbuilding & Dry Dock Co. v. Director,* 583 F.2d 1273, 1278 (4th Cir. 1978), *cert. denied,* 440 U.S. 915, 99 S.Ct. 1232, 59 L.Ed.2d 465 (1979) (denial of workers' compensation benefits by Industrial Commission of Virginia not claim preclusive of entitlement to LHWCA benefits). *See also* Wright, Miller & Cooper, *supra,* §§ 4412, 4475.¹⁵ We applied this doctrine

---

does (assuming, *arguendo,* its applicability to federal administrative determinations).

**15.** Wright, Miller & Cooper state essentially the same rules:

"It is clear enough that a litigant should not be penalized for failing to seek unified disposition of matters that could not have been combined in a single proceeding, and even clearer that no penalty should be inflicted if a deliberate effort to combine such matters has been expressly rejected." *Id.* § 4412 at 93.

"Matters that can be advanced only before an administrative agency ordinarily do not form part of a single claim with matters that can be advanced only before another agency or a court." *Id.* at 94 (footnote omitted).

"Limits on the competence of a particular agency, moreover, may lead to the conclusion that it lacked authority or occasion even to address the legal issues tendered in a subsequent judicial action. If an agency nonetheless presumes to decide an issue beyond its

in the section 2283 context in *Nix,* where we rejected the argument that an NLRB determination that an employee's firing was not an unfair labor practice and hence did not mandate reinstatement was claim preclusive of the employee's state court claim seeking reinstatement on the basis that the firing constituted a breach of contract, stating:

> "The fallacy of this argument is that the doctrine of res judicata is applicable only when the cause of action in the second suit is identical to the cause of action in the first.... He [the employee] could only have brought the unfair labor practice charges before the NLRB. Since he was unable to bring the contract claim based on state law in that forum, he did not 'split his cause of action' by bringing it in state court." 512 F.2d at 131.

Accordingly, it is clear that the ALJ's award was neither claim preclusive nor issue preclusive of Jackson's state court suit, and that it could not suffice to invoke the relitigation exception to section 2283. There being no other even arguable basis for that exception, we hold it was unavailable.

*"[A]s expressly authorized by Act of Congress"*

We turn now to the "as expressly authorized by Act of Congress" exception to section 2283, the only other exception stated in section 2283 and relied on either by TEIA or the district court (*see* note 6, *supra*). The only "Act of Congress" asserted to "expressly authorize[ ]" the injunction in question is section 21(d) of the LHWCA, 33 U.S.C. § 921(d), which provides as follows:

> "If any employer or his officers or agents fails to comply with a compensation order making an award, that has become final, any beneficiary of such award or the deputy commissioner making the order, may apply for the enforcement of the order to the Federal district court for the judicial district in which the injury occurred (or to the United States

District Court for the District of Columbia if the injury occurred in the District). If the court determines that the order was made and served in accordance with law, and that such employer or his officers or agents have failed to comply therewith, the court shall enforce obedience to the order by writ of injunction or by other proper process, mandatory or otherwise, to enjoin upon such person and his officers and agents compliance with the order."

 In this connection, TEIA relies on *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), which held that 42 U.S.C. § 1983 was within this exception to section 2283 despite the fact that section 1983 neither expressly refers to section 2283 nor expressly authorizes injunctions of state court proceedings. *Id.* at 2159. However, *Mitchum* placed heavy reliance on the fact that it was "clear from the legislative debates surrounding passage of § 1983's predecessor that the Act was intended to enforce the provisions of the Fourteenth Amendment 'against State action ... whether that action was executive, legislative or *judicial.*' *Ex parte Virginia,* 100 U.S. 339, 346, 25 L.Ed. 676 (emphasis supplied)." There is simply no comparable legislative history respecting the LHWCA. Moreover, *Mitchum* plainly requires, in order for the expressly authorized exception to be invoked, that

> "an Act of Congress must have created a *specific* and uniquely federal *right* or remedy, *enforceable in a federal court of equity, that could be frustrated* if the federal court were not empowered to enjoin a state court proceeding." *Id.* 92 S.Ct. at 2159 (emphasis added).

This passage unambiguously requires that what must be subject to frustration, absent exception to section 2283, is a specific, uniquely federal right enforceable in a federal court of equity. The only such federal right enforceable in a federal court of equity that section 921(d) creates is a right on behalf of the covered employee (or adminis-

---

jurisdiction, courts are likely to apply vigorously the general principle that preclusion is defeated when strong policies underlie the

lines that limit the authority of the tribunal that made a prior decision." *Id.* § 4475 at 767–68 (footnotes omitted).

trative official on his behalf) to enforce against an employer or insurer payment of an award made under the LHWCA. Obviously, that right could not possibly be frustrated if the federal court were unable to enjoin state proceedings brought by the worker against the insurance carrier for tort damages allegedly due the worker under state law. Simply stated, section 921(d) does not confer rights—let alone a specific and uniquely federal right enforceable in a federal court of equity—on the LHWCA employer or its insurance carrier.

■■■ Of course, the fact that the statute authorizes an injunction by one party for one purpose, and hence in such a case may come within the expressly authorized exception to section 2283, does not mean that the bar of section 2283 is inapplicable where an injunction is sought by a different party and for a different purpose. That, indeed, is the clear holding in *Amalgamated Clothing Workers*, where the Court refused to find that the "expressly authorized" exception applied to an injunction sought by a union against state court injunctive proceedings brought against it by the employer, despite the fact that the relevant statute did authorize analogous federal injunctive relief at the request of the National Labor Relations Board. 75 S.Ct. at 455–56.[16] Moreover, a contrary conclusion would clearly be inconsistent with the result in *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977). To say that the LHWCA provision entitling workers to secure injunctions against employers or insurers for one purpose authorizes the latter to procure injunctions against the former for a wholly different purpose is simply to stand the LHWCA on its head. It also wholly disregards the words "as expressly" in section 2283 and the admonitions of the Supreme Court that section 2283's prohibition "is not to be whittled away by judicial improvisation," *Amalga-*

*mated Clothing Workers*, 75 S.Ct. at 454, and that its exceptions "are narrow and 'are not [to] be enlarged by loose statutory construction.'" *Chick Kam Choo*, 108 S.Ct. at 1689.

The district court also made passing reference in this connection to section 5(a) of the LHWCA, 33 U.S.C. § 905(a), the exclusivity provision of the statute.[17] However, nothing in section 5(a) purports to grant anyone a right or remedy "enforceable in a federal court of equity." Section 5(a) may indeed provide a basis for TEIA's claims that Jackson's state law claims are preempted by the LHWCA, but, as we have observed, that does not suffice to avoid the bar of section 2283. *See, e.g., Chick Kam Choo*, 108 S.Ct. at 1691.

Accordingly, we hold that the "as expressly authorized by Act of Congress" exception to section 2283 is inapplicable.

*Injunctive relief not available*

■■■ Section 2283 generally bars injunctions against the prosecution of pending state court proceedings. The only exceptions are those stated in section 2283 itself, and none of those are applicable here. That being the case, federal preemption or interference with a federally protected right, even when such is unmistakably clear, does not suffice to avoid the bar of section 2283. Section 2283 hence deprived the district court of authority to issue the injunction.

### Declaratory Judgment

We next turn to the remaining question presented, namely, whether the district court, though barred by section 2283 from granting TEIA an injunction against Jackson's further prosecution of his state suit, could nevertheless grant TEIA's request for declaratory judgment that Jackson's state suit claims were all invalid because

---

16. *Amalgamated Clothing Workers* specifically distinguished the earlier decision in *Capital Service, Inc. v. National Labor Relations Board,* 347 U.S. 501, 74 S.Ct. 699, 98 L.Ed. 887 (1954), on that basis. 75 S.Ct. at 456.

17. Section 905(a) provides in pertinent part: "The liability of an employer prescribed in section 904 of this title [liability for compensation benefits and medical expenses] shall be exclusive and in place of all other liability of such employer to the employee ... on account of such injury...."

preempted by the LHWCA or precluded by the ALJ award.

■ One of the main purposes of the Federal Declaratory Judgment Act (note 2, *supra*) was to provide a means to grant litigants judicial relief from legal uncertainty in situations that had not developed sufficiently to authorize traditional coercive relief. Litigants would no longer be put to the Hobson's choice of foregoing their rights or acting at their peril; nor, if they had already acted, would they be forced to wait, for perhaps many years, until the statute of limitations expired, to know whether they had been subjected to some significant liability. *See, e.g., Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 690–92, 27 L.Ed.2d 701 (1971) (opinion of Justice Brennan, joined by Justices White and Marshall, concurring in part and dissenting in part). In the words of Professor Borchard, in his written statement submitted at the hearings on the Federal Declaratory Judgment Act, with the enactment of that statute the courts would no longer have to tell "the prospective victim that the only way to determine whether the suspect is a mushroom or a toadstool, is to eat it." [18]

TEIA's instant suit is wholly outside the foregoing parameters. As previously noted, it was filed almost a year after Jackson's state suit was filed, and many months after the ALJ's award had become final and had been paid in full. The state court had overruled TEIA's plea in bar, and the state case was moving along to trial. TEIA's conduct complained of in the state suit had long since been concluded, and years had passed since Jackson had engaged in any LHWCA-covered employ-

ment. There was no putative mushroom that TEIA wished to eat, but only after first receiving judicial advice. Nor was TEIA in the position of not knowing when its potential liability would ever be judicially determined, for the state case was moving to resolution. There was no dispute between TEIA and Jackson other than Jackson's state suit. TEIA's federal action was not to resolve a controversy that existed independently of Jackson's state suit; nor was it to decide some other controversy, with merely incidental effect on the state suit. It is plain that the *only* purpose and effect of TEIA's federal suit was to defeat Jackson's state suit against it and to, in effect, overrule the state trial court's denial of TEIA's plea in bar.

To allow declaratory relief in these circumstances would be to transform section 2283 from a pillar of federalism reflecting the fundamental constitutional independence of the states and their courts, to an anachronistic, minor technicality, easily avoided by mere nomenclature or procedural sleight of hand. A federal declaratory judgment will, of course, be *res judicata* of the state suit, thus resolving it as surely as an injunction, and in any event the declaratory judgment can itself be enforced by injunction under 28 U.S.C. § 2202 pursuant to the "protect or effectuate" exception to section 2283. As the Court observed in *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 767–68, 27 L.Ed.2d 688 (1971):

"[O]rdinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid. This is

---

**18.** Hearings on H.R. 5623 before a Subcommittee of the Senate Committee on the Judiciary, 70th Cong., 1st Sess., 75–78 (1928), as quoted in *Perez,* 91 S.Ct. at 692. In *Perez,* Justice Brennan also quotes from the Senate Report (S.Rep. No. 1005, 73d Cong., 2d Sess. (1934)) on the Federal Declaratory Judgment Act the following, among other passages:

"'The procedure has been especially useful in avoiding the necessity, now so often present, of having to act at one's peril or to act on one's own interpretation of his rights, or abandon one's rights because of a fear of incurring damages. So now it is often necessary, in the absence of the declaratory judg-

ment procedure, to violate or purport to violate a statute in order to obtain a judicial determination of its meaning or validity.'" *Perez,* 91 S.Ct. at 690–91.

By contrast, it has long been recognized that "'[t]he wholesome purposes of declaratory acts would be aborted by its use as an instrument of procedural fencing ... to choose a forum.'" *New Orleans Public Service, Inc. v. Majoue,* 802 F.2d 166, 168 (5th Cir.1986) (quoting *H.J. Heinz Co. v. Owens,* 189 F.2d 505, 508 (9th Cir.1951), *cert. denied,* 342 U.S. 905, 72 S.Ct. 294, 96 L.Ed. 677 (1952), quoting *American Automobile Ins. Co. v. Freundt,* 103 F.2d 613, 617 (7th Cir.1939)).

true for at least two reasons. In the first place, the Declaratory Judgment Act provides that after a declaratory judgment is issued the district court may enforce it by granting '[f]urther necessary or proper relief,' 28 U.S.C. § 2202, and therefore a declaratory judgment issued while state proceedings are pending might serve as the basis for a subsequent injunction against those proceedings to 'protect or effectuate' the declaratory judgment, 28 U.S.C. § 2283, and thus result in a clearly improper interference with the state proceedings. Secondly, even if the declaratory judgment is not used as a basis for actually issuing an injunction, the declaratory relief alone has virtually the same practical impact as a formal injunction would."

■ Accordingly, we follow the weight of authority in holding that "[i]f an injunction would be barred by § 2283, this should also bar the issuance of a declaratory judgment that would have the same effect as an injunction." Wright, *Federal Courts* § 47 at 285 (4th Ed. 1983).[19] *See also, e.g.,* *Ahrensfeld v. Stephens,* 528 F.2d 193, 197 n. 6 (7th Cir.1975) ("Nearly all of the cases in this area involve declaratory as well as injunctive relief. Declaratory relief has been generally regarded as to be as objectionable in this context as injunctive relief."); *Thiokol Chemical Corp. v. Burlington Industries, Inc.,* 448 F.2d 1328, 1332 (3d Cir.1971), *cert. denied,* 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668 (1972)[20]; *Chandler v. O'Bryan,* 445 F.2d 1045, 1058 (10th Cir.1971), *cert. denied,* 405 U.S. 964, 92 S.Ct. 1176, 31 L.Ed.2d 241 (1972) ("[W]here an injunction is improper under

§ 2283, declaratory relief should not be given. *Samuels v. Mackell ....*"); *Garrett v. Hoffman,* 441 F.Supp. 1151, 1155–56 (E.D. Pa.1977). In *H.J. Heinz Co. v. Owens,* 189 F.2d 505 (9th Cir.1951), *cert. denied,* 342 U.S. 905, 72 S.Ct. 294, 96 L.Ed. 677 (1952), the Ninth Circuit affirmed the dismissal of a federal suit for injunctive and declaratory relief aimed at a pending state proceeding. The Court noted that section 2283 barred injunctive relief and, respecting declaratory relief, remarked on "the perversion of the purpose of declaratory judgment legislation which occurs when it is used to anticipate the result of litigation pending in another forum," *id.* 189 F.2d at 508, and went on to state:

"The strong and consistently recognized national policy to avoid such needless conflict or friction between state and federal courts underlies and finds legislative expression in Section 2283.... [T]his statute and the policy underlying it afford sound basis for a judicial conclusion that the granting of such declaratory relief would constitute an abuse of discretion." *Id.* at 509.

*Heinz* was cited with approval in this respect in *Samuels v. Mackell,* 91 S.Ct. at 768. Likewise, in *T. Smith,* we quoted with approval the concluding portion of the above-set out language, beginning with "this statute." 275 F.2d at 406.

Finally, any remaining doubt on this score was surely laid to rest by the decision in *California v. Grace Brethren Church,* 457 U.S. 393, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982), where the Court held that the Tax Injunction Act, 28 U.S.C. § 1341,[21] precluded declaratory judgment that a state tax

---

**19.** To the same effect is Wright, Miller & Cooper, *supra,* § 4222 at 503–04 ("Thus if a declaratory judgment would have essentially the same effect as an injunction, it should be refused if the injunction would be barred by § 2283." (Footnote omitted.)).

**20.** *Thiokol* states (448 F.2d at 1332): "Normally, the policy that precludes federal injunctions against state actions is also applied to prohibit declaratory judgments.... True, the statute [section 2283] explicitly prohibits only injunctions. Its analogical extension to prohibit declaratory judgments is justified in situations where the underlying policy against unseemly

interference with proper state litigation applies to both," and accordingly, the federal declaratory judgment suit "should not proceed unless and until it shall appear to and be found by the district court that the state court is willing to hold the matter before it in abeyance pending a declaratory federal adjudication."

**21.** Section 1341 provides:

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

law was unconstitutional. The Court observed:

"Although this Court once reserved the question, we now conclude that the Act also prohibits a district court from issuing a declaratory judgment holding state tax laws unconstitutional." *Grace Brethren Church*, 102 S.Ct. at 2507 (footnote omitted).

The *Grace Brethren Church* opinion goes on to explain:

"[B]ecause there is little practical difference between injunctive and declaratory relief, we would be hard pressed to conclude that Congress intended to prohibit taxpayers from seeking one form of anticipatory relief against state tax officials in federal court, while permitting them to seek another...." *Id.* at 2508.

The same reasoning is fully applicable to section 2283.

For its holding that section 2283 though barring an injunction nevertheless did not prohibit declaratory relief, the panel majority, 820 F.2d at 1420, relied primarily on *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), particularly its language that injunctions were "strong medicine" while declaratory relief was "less intrusive." *Id.* at 1219, 1221. We disagree, and on the contrary read *Steffel* as wholly consistent with the view that declaratory relief is inappropriate where section 2283 bars an injunction. The crucial fact in *Steffel* was that there was no pending state court proceeding. Section 2283, however, "has no application until the [state] proceedings have begun. An injunction can issue from a federal court restraining a party from instituting state proceedings." Wright, Miller & Cooper, *supra*, § 4222 at 506–07. Thus *Steffel* did not present a situation where declaratory relief could be used to achieve a result forbidden by section 2283. In *Steffel*, the party seeking declaratory relief desired to engage in handbilling at a shopping center, but had been warned that if he did so he would be arrested and charged with violating a state criminal statute. He then, without ever having been arrested or charged, sought in the federal court a declaratory judgment that the state statute was unconstitutional. 94 S.Ct. at 1214.[22] That no state proceeding was pending was not merely incidental to *Steffel*, but was rather critical to both its reasoning and result.

*Steffel* commences by stating that "[t]his case presents the important question ... whether declaratory relief is precluded when a state prosecution has been threatened, but is not pending." *Id.* at 1213. It observes that "the Court's recognition that the relevant principles of equity, comity, and federalism 'have little force in the absence of a pending state proceeding.'" *Id.* at 1217. In a significant passage, it then sets out four reasons why declaratory relief in these circumstances is not inappropriate:

"When no state criminal proceeding is pending at the time the federal complaint is filed, federal intervention [1] does not result in duplicative legal proceedings or [2] disruption of the state criminal justice system; [3] nor can federal intervention, in that circumstance, be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles. In addition, [4] while a pending state prosecution provides the federal plaintiff with a concrete opportunity to vindicate his constitutional rights, a refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of foregoing what he believes to be constitution-

**22.** It is to be noted that *Steffel* presented the classic case for declaratory relief, where the plaintiff is put to the Hobson's choice of giving up an intended course of conduct which he believes he is entitled to undertake or facing possible severe civil or criminal consequences if he does undertake it. *Steffel* in this connection reiterates Professor Borchard's comments, in urging enactment of the Federal Declaratory

Act, about the mushroom-toadstool dilemma, *id.* at 1220 n. 18, and otherwise reviews the legislative history of that statute to show it was intended to afford relief in such circumstances. *Id.* at 1219–22. Those considerations are wholly inapplicable to the present case, and likewise to most or all others covered by section 2283, which presupposes a pending state proceeding.

ally protected activity...." *Id.* at 1217 (bracketed numbers supplied).

It is to be noted that *none* of these considerations favoring declaratory relief is applicable here, nor would any of them be applicable in almost any case in which section 2283 prevented injunctive relief as each depends on the absence of a pending state suit.

Thus, *Steffel*'s mention of the "less intrusive" nature of declaratory relief must be understood as referring to instances where there is no pending state proceeding. This is made plain by the following passage from the opinion:

> "*When* no state proceeding is pending *and thus* considerations of equity, comity, and federalism have little vitality, the propriety of granting federal declaratory relief may properly be considered independently of a request for injunctive relief." *Id.* at 1217 (emphasis added).

Moreover, *Steffel*'s heavy reliance, *id.* at 1219–22, on Justice Brennan's separate opinion in *Perez* is highly relevant. In his *Perez* opinion, Justice Brennan clearly stated:

> "[W]here a state proceeding exists that was pending at the time suit was filed in federal court the federal court should ordinarily decline to render either declar-

atory or injunctive relief." 91 S.Ct. at 693 (footnote omitted).[23]

Surely Justice Brennan, in his *Steffel* opinion, had no intention of departing from what he had written in *Perez*. At all events, the Court's most recent opinion on this subject in *Grace Brethren Church* clearly points to the result we reach here.

We conclude that section 2283 and the policies which underlie it prohibit declaratory as well as injunctive relief here. This prevents the emasculation of section 2283 and accommodates the concerns of comity and federalism which underlie it, while at the same time preserving the core functions and purposes of the Declaratory Judgment Act. Accordingly, the district court should not have entertained TEIA's request for declaratory judgment.[24]

## Conclusion

We do not pass on the merits of TEIA's preemption claim. Assuming, as we do, that that claim has merit, we nevertheless hold that pursuant to section 2283 and the principles underlying it the district court should not have entertained TEIA's request for either injunctive or declaratory relief. As that is all the relief sought by TEIA, its suit must be dismissed. The dismissal is, of course, without prejudice to TEIA's assertion that the claims advanced

---

**23.** Other portions of Justice Brennan's *Perez* opinion are in accord, *viz.:*

> "[T]he most significant factor determining the propriety of federal intervention is whether a state proceeding exists that was initiated *before* the federal suit was filed.
>
> "....
>
> "... The pending state proceeding ordinarily provides an existent, concrete opportunity to secure vindication of constitutional claims in the state courts, with ultimate review by this Court. In this situation collateral resort to a federal court will not speed up the resolution of the controversy.... Moreover, federal intervention may disrupt the state proceeding.... Federal adjudication of the matters at issue in the state proceeding may otherwise be an unwarranted and unseemly duplication of the State's own adjudicative process. For these reasons, federal courts should not ordinarily intervene by way of either declaratory or injunctive relief...." *Id.* at 692, 695 (emphasis in original).

**24.** The dissent asserts that declaratory (though not injunctive) relief was proper because the

state suit was removable since the LHWCA completely displaced and preempted all Jackson's claims therein under the theory of *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). As stated in note 8, *supra,* we do not resolve whether or not the attempted analogy to *Metropolitan Life* is apt. Of course, if the state court suit were never potentially removable, the removal argument is necessarily unavailing to sustain declaratory relief. Assuming, *arguendo* only, that Jackson's state court suit was potentially removable, there has never been even any attempt to remove it, and the right of removal is clearly one which may be waived. We decline to authorize an "end run" around removal procedures and jurisprudence by authorizing a party to ignore removal (and its limitations) but nevertheless achieve the same result by filing a federal court declaratory judgment suit with the sole object of litigating a preemptive defense to the federal defendant's earlier filed, pending state court suit against the federal plaintiff.

against it by Jackson in his state suit are preempted by the LHWCA. That matter we leave to resolution, as between Jackson and TEIA, by the state trial court, subject to review by the state appellate courts and ultimately by the United States Supreme Court.

Accordingly, the judgment of the district court is REVERSED and the cause is ordered DISMISSED.

CLARK, Chief Judge, concurring specially in the opinions of Circuit Judges GARWOOD and ALVIN B. RUBIN:

In this case that has produced three other opinions, I add a fourth, not to say I disagree with any of them but to emphasize the one critical matter that none of us disputes: *The state cause of action is preempted by LHWCA.* If I could read *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), to permit declaratory relief, I would join Judge Brown. His reasoning would assure the only just, common-sense end to this law suit. While the majority opinion is full of proper legal sound and fury, it can signify nothing but trouble or injustice.

I wish I didn't feel bound to agree that precedent compels this court to send the case to a court that, if it acts correctly, may only dismiss. If the State court should act improperly to entertain this litigation and grant the relief sought by plaintiff, the only hope (and that hope is a forlorn one as Judge Rubin points out) for correction the Association will have will be the chance it can secure discretionary review in an overburdened Supreme Court. I am at a loss to comprehend how this procedure can advance comity. Exalting the form of the anti-injunction act over the substance of preemption strips both comity and justice of their meaning.

ALVIN B. RUBIN, Circuit Judge, with whom JOHNSON, Circuit Judge, joins concurring (Circuit Judges BROWN and WILLIAMS join in part II):

## I.

The court's opinion follows settled doctrine and I therefore join in it.

## II.

It is time, however, for Congress to reconsider the statute that we are obliged to follow, for it is no longer adequate to assure the protection of federal rights.

There can be little doubt that the LHWCA preempts state jurisdiction over suits involving failure to pay compensation under the Act.[1] Yet we rely on state courts to enforce the employer's federal right not to have this claim litigated in state court, stating that, if state courts do not protect that right, the employer may seek relief from the United States Supreme Court. While the state courts once had exclusive original jurisdiction over claims arising under federal law, federal-question jurisdiction is now vested in the federal district courts with appeal to the circuit courts of appeal. State trial and appellate courts are therefore no longer as familar with these questions as they were a century ago. The state court judgments in such cases are subject to final review by the Supreme Court, but this remedy is no longer available by appeal, for as a result of recent legislation virtually eliminating the Court's mandatory appellate jurisdiction,[2] litigants must seek relief by application to the Court for a writ. Such writs are only sparingly granted. In the 1987–88 term, which was typical, the Court granted only 267 writs, including the miscellaneous docket, and published only 259 opinions, including per curiams and memoranda. Given the other demands on the Court's time, including the presentation to it each year of more than 4400 applications for writs, the number of

---

1. See Majority Opinion, *supra,* Footnote 7.

2. Act of June 27, 1988, Pub.L. 100–352, §§ 3, 7, 102 Stat. 662, 664 (to be codified at 28 U.S.C.

§ 1257); *see* H.R.Rep. 660, 100th Cong., 2d sess. (1988), *reprinted in* 1988 U.S.Code Cong. & Admin.News 766–83.

cases in which state courts decide federal-preemption questions, and the even larger number in which federal courts abstain from deciding federal issues, again leaving final, now discretionary, review to the Supreme Court,[3] the volume of litigation presented to the Court is now so large that the Court simply cannot adequately assure the protection of federal rights in those cases. Thus both in cases governed by the Anti–Injunction Act and in those controlled by rules requiring federal court abstention, the promised ultimate review by the Supreme Court is apt to be illusory. The remedy, of course, lies with Congress, or, in abstention cases, in reconsideration of the doctrinal rules by the Supreme Court.

JOHN R. BROWN, Circuit Judge, with whom JERRE S. WILLIAMS, Circuit Judge, joins dissenting in part and concurring in part:

**I.**

I concur in that portion of the Court's[1] opinion which in effect holds that LHWCA preempts Jackson's assorted Texas-based claims for tortious, bad faith, delay in payment and failure to pay and provide longshore benefits. Although it mildly disclaims[2] any such purpose, the disclaimer, under the accepted principles of the Fifth Circuit is ineffectual.

This Court, through Judge Garwood speaking for the panel (Judges Gee and Jones) in all of its majesty has indeed—as TEIA has long asserted—determined that any such state based claim is preempted by the LHWCA. *Atkinson v. Gates, McDonald & Company*, 838 F.2d 808, *reh'g en banc denied*, 844 F.2d 788 (5th Cir. 1988). The only remaining question is whether this decision effectually reflects the view of this Court en banc.

Under the long accepted and oft repeated[3] standards, *Atkinson* is binding on all panels of this court—which means all of the Judges thereof—until overruled by the court en banc. The en banc court does have the power to reject it, but until rejected by the court en banc it is the law of this circuit.

Here the court, citing *Atkinson* with full approval and no criticism or disapproval, has failed to reject or disapprove its holding. The decision is therefore binding on the Court of Appeals for the Fifth Circuit and each and all of the Judges comprising either the en banc court, the majority of the en banc court, or the panel.

Moreover on the intrinsic merits of preemption, *Atkinson* applies the same triple analysis used in the panel opinion[4] of (i) Congressional intention to preempt,[5] (ii)

---

**3.** *See, e.g., New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 850 F.2d 1069 (5th Cir.1988).

**1.** As it is the court, and not just a majority, I use this terminology throughout to refer to Judge Garwood's powerful opinion for the Court sitting en banc.

**2.** *See* the Court's n. 7: "[A]nother panel of this Court ... held that a state law cause of action for a bad faith failure to pay LHWCA compensation when due was preempted by the LHWCA. *Atkinson v. Gates, McDonald & Co.*, 838 F.2d 808, *rehg. en banc denied*, 844 F.2d 788 (5th Cir.1988). Our holding concerning the Anti–Injunction Act and the Declaratory Judgment Act implies no disagreement with *Atkinson*, which remains the law of this Circuit unless overruled by a subsequent contrary pronouncement of the Supreme Court or of this Court en banc." *Texas Employer's Ins. Ass'n v. Jackson*, 820 F.2d 1406, 1412 n. 7 (en banc).

**3.** *Alexander v. Chevron, U.S.A.*, 806 F.2d 526, 527 (5th Cir.1986) (citing *United States v. Albert,*

675 F.2d 712, 713 (5th Cir.1982)); *Keith v. St. George Packing Co.*, 806 F.2d 525, 526 (5th Cir. 1986); *Ketchum v. Gulf Oil Corp.*, 798 F.2d 159, 162 (5th Cir.1986); *Victorian v. Miller*, 796 F.2d 94, 96 (5th Cir.1986); *Wilson v. Taylor*, 658 F.2d 1021, 1034 (5th Cir.1981); *Washington v. Watkins*, 655 F.2d 1346, 1354 n. 10 (5th Cir.1981); *Hernandez v. City of Lafayette*, 643 F.2d 1188, 1192–93 (5th Cir.1981) (citing *Ford v. United States*, 618 F.2d 357, 361 (5th Cir.1980); *Davis v. Estelle*, 529 F.2d 437, 441 (5th Cir.1976) and *Robinson v. Parsons*, 560 F.2d 720, 721 n. 2 (5th Cir.1977)); *Fulford v. Klein*, 529 F.2d 377, 379 (5th Cir.1976).

**4.** This refers to the panel (Judges Brown, Reavley and Jones) opinion, *Texas Employer's Ins. Ass'n v. Jackson*, 820 F.2d 1406 (5th Cir. 1987). Judge Jones dissented in part in the panel opinion.

**5.** Panel Op., 820 F.2d 1406 at 1411.

comprehensiveness of the federal scheme [6] and (iii) the state law conflicts with federal law [7] to declare the state case to be preempted.

## II.

Without a doubt preemption of LHWCA is and always has been the critical issue in this case. It is the burning question now committed by the court to the state courts of Texas. In a day and time where the demands are beyond the capacity of the judiciary readily to handle the exponential increase in the volume of litigation, there is a need for an authoritative pronouncement of federal law by a federal court having jurisdiction over the subject and the parties.

That need, that demand is in no sense a theoretical, academic problem. Indeed a pronouncement of that federal constitutional law has immediate, great practical utility. Although this pronouncement has no coercive effect of its own, there is no doubt that the Texas courts will, as always, accord full weight to the determination of this federal court having jurisdiction over the parties, speaking in terms of the application of a federal statute with the constitutional imprimatur of the Supremacy Clause.

## III.

I dissent as to the court's holding that, as in the case of an injunction, the Anti–Injunction Act prohibits in this case the issuance of a declaratory order.

I start with the proposition that despite the well-pleaded complaint rule sired by *Louisville & Nashville Railroad Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908), the case of *Jackson v. Texas Employers' Ins. Ass'n* filed in the District Court of Jefferson County, Texas, was one within the jurisdiction of the United States District Court. To be sure, the negative characterization of the well-pleaded com-

plaint rule provides that the presence of a contention of federal preemption as a defense to the state-based claim, does not make the case within the jurisdiction of the federal court. But this negative characterization is dispelled by a proper consideration of Supreme Court precedents. In *Avco Corp. v. Machinists,* 376 F.2d 337 (6th Cir.1967), *aff'd,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968),[8] the plaintiff employee filed suit in state court alleging that the defendant union had breached its "contract" by sanctioning work stoppages. The employee sought temporary and permanent injunctions. Clearly, the plaintiff had a federal cause of action under § 301 of the LMRA, if he desired it. The union then sought to remove the case to federal court, over the employee's objections.

The court of appeals held, and the Supreme Court affirmed, that the employee's action "arose under" § 301, and thus the union's motion to remove the case to federal court was proper. (The removal statute,[9] is procedural and derivative only. An independent basis of jurisdiction must be established in either removal or declaratory judgment actions.) The necessary ground of decision in *Avco* was that "the preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violations of contracts between an employer and a labor organization.... Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.... *Avco* stands for the proposition that if a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Board,* 463 U.S. at 23–24, 103 S.Ct. at 2853, 77 L.Ed.2d at 440.

This continues to be controlling law. In a very recent decision, the Supreme Court has continued the trend begun nearly 20 years ago in *Avco.* In *Metropolitan Life*

---

**6.** *Id.* at 1411–12.

**7.** *Id.* at 1412.

**8.** The majority, save for reference to Judge Jones' dissent in the panel opinion, avoids resolving "this difficult issue."

**9.** *See* 28 U.S.C. § 1441(b).

*Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987),[10] the Court affirmed the vitality of *Avco* and extended the *Avco*–LMRA exception to analogous ERISA cases. After setting out the general nature of the well-pleaded complaint rule, the Court states

> One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-exempt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character. For 20 years [since *Avco*], this Court has singled out claims preempted by § 301 of the Labor Relations Management Act for such special treatment.
>
> ....
>
> The question thus resolves itself into whether or not the *Avco* principle can be extended to statutes other than the LMRA in order to recharacterize a state law complaint displaced by § 502(a)(1)(B) [the section conferring private causes of action under ERISA] as an action arising under federal law.

481 U.S. 63–64, 107 S.Ct. at 1546–47, 95 L.Ed.2d at 63.

To answer that question, the Court, with little difficulty, found that Congress has conferred federal jurisdiction in cases with such overarching federal, legislatively declared interests. Accordingly, the Court concluded that *Taylor,* although "purport[ing] to raise only state law claims, is necessarily federal in character by virtue of the clearly manifested intent of Congress." *Id.* at 67, 107 S.Ct. at 1548, 95 L.Ed.2d at 65.[11]

Our question, then, is whether the LHWCA is powerful enough to satisfy the principle of *Avco* and *Taylor:* stated differently, is the LHWCA entitled to the same federal protection as are the LMRA and ERISA. It is a question easily answered in the affirmative. The Court focuses on the "explicit direction" from Congress—both in statute and legislative history—that demonstrates its intent utterly to "displace" state law in establishing federal question jurisdiction. As set forth in some detail in the panel opinion, the LHWCA, springing originally from the impeccably federal province of admiralty jurisdiction, has continued, unquestioned through fifty years of Congressional monitoring, to remain squarely under the protection of federal jurisdiction. A review of the LHWCA and its legislative history yields at least as strong "explicit direction."

Our determination that the LHWCA is so preemptive as to create federal question jurisdiction is no "expansion" of the *Avco* rule. The LHWCA, if anything, is broader, and more comprehensive than the LMRA. The LMRA merely places jurisdiction of labor disputes in the federal district courts. The LHWCA, on the other hand, contains not only the exclusive remedy section (§ 905(a)), but also sets out sections and chapters that comprehensively regulate employers and insurance carriers that provide LHWCA coverage, and utterly control the sum total of rights and obligations of insurers, employers and employees. This, by no means, then, dilutes the *Avco* rule; it acknowledges an exception more powerful than the original. *See also Taylor,* 481 U.S. 58 at 67, 107 S.Ct. at 1548, 95 L.Ed. 2d at 65 (Brennan, J., concurring).

There is no doubt that Jackson's state suit was bottomed on the LHWCA.[12]

---

**10.** The majority, save for reference to Judge Jones' dissent in the panel opinion, avoids resolving "this difficult issue."

**11.** Only a few illustrations are necessary to reveal how pervasive is the LHWCA and how destructive an interference are Jackson's state asserted claims. For example, in Paragraph VII of Jackson's state court complaint, Jackson purports to invoke Article 21.21 of the Texas Insurance Code in pleading that "three times the amount of actual damages be awarded as a matter of law." Yet § 905 of the LHWCA pro-

vides that the liability prescribed under the Act "shall be exclusive and in place of all other liability...."

Jackson also abrogates the Congressionally established scheme of LHWCA economic rights and limitations in Paragraph XIV of his complaint. There, he invokes the Texas Deceptive Trade Practices Act seeking "as a matter of law [that] damages be trebled."

**12.** *See* the Court's opinion, *supra,* at 495.

Without it, no payments were due by TEIA, no medical benefits had to be furnished by TEIA. Without the LHWCA there was no basis whatever for any relief. His claim became even more specific in terms of LHWCA by his assertion that (i) he was entitled to prompt payment of compensation benefits and (ii) the exercise by TEIA of its statutory right to file a controversion was in bad faith under and in violation of Texas standards.

The result is that TEIA could have removed this case to the same federal District Court that granted the aborted injunction and declaratory judgment. In no way do I suggest that its failure to be removed now affords it a right to ignore the Anti–Injunction Act. But now things are quite different. No longer is it just a case which can properly be filed and tried in the state court. Now it is a case which was initially one properly triable in the Federal District Court. For that same Federal Court to grant a declaratory order that the state case is preempted by LHWCA is not an unseemly intrusion into an independent tribunal. The absence of intrusion distinguishes the situation in which declaratory relief is held unavailable on the analogy of the Anti–Injunction Act because of like intrusive effect.

I therefore dissent.

This is factually highlighted by the following excerpts from Jackson's state complaint:

It was Texas Employers' Insurance Association's duty under the Longshoreman & Harbor Worker's Compensation Act to pay Leroy Jackson disability benefits.

. . . .

This suit is also filed as a result of Defendant's tortious breach of their common-law duty to act with care, skill, reasonable expedience and faithfulness in the performance of their duties under the Longshoreman & Harbor Worker's Compensation Act.

... The Longshoreman & Harbor Worker's Compensation Act imposes a duty upon Defendant to perform with care, skill, reasonable expedience and faithfulness its duties as set forth under the Act.

. . . .

... They misrepresented material facts to a variety of people, these misrepresentations were relied on and they were relied on to the detriment of Leroy Jackson. These misrepresentations were intentional and designed to defraud Leroy Jackson of his rights under the Longshoreman & Harbor Worker's Compensation Act and his compensation benefits....

Defendant, its agents, servants and/or employees have committed the tort of intentional infliction of emotional distress.... These acts and steps were specifically aimed at defrauding Leroy Jackson of his rights under the Longshoreman & Harbor Worker's Compensation Act....

Defendant, its agents, servants and/or employees, negligently inflicted emotional distress on Leroy Jackson.... They negligently took these steps in an effort to deny Leroy Jackson compensation benefits rightfully due to him under the Longshoreman & Harbor Worker's Compensation Act.